**Jerry SCHOOFIELD**

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration.**

**No. CIV. S 01–2031.**

United States District Court, D. Maryland.

Sept. 6, 2002.

**514**

David E Furrer, Seigel Tully and Furrer Law Offices, Baltimore, MD, USA, for Jerry Schoofield, plaintiff.

Jamie M Bennett, Ariana Wright Arnold, Office of the United States Attorney, Baltimore, MD, USA, for Larry C. Massanari, Commissioner of the Social Security Administration, defendant.

### ORDER

SMALKIN, Chief Judge.

Upon *de novo* review of the Magistrate Judge's Report and Recommendation entered August 12, 2002, and upon the expiry of the time for taking exception thereto, neither party having filed any objections to the said Report and Recommendation, it is, this 6th day of September, 2002, ORDERED:

1. That the Magistrate Judge's Report and Recommendation BE, and it hereby IS, AFFIRMED and ADOPTED;

2. That the parties' cross-motions motion for summary judgment BE, and they hereby ARE, DENIED;

3. That the decision of the Commissioner BE, and it hereby IS, REVERSED;

4. That this case BE, and the same hereby IS, REMANDED to the jurisdiction of the Commissioner of the Social Security Administration for the institution of further proceedings in accordance with the Magistrate Judge's Report and Recommendation within sixty days of the date hereof; and

5. That the Clerk of Court mail copies of this Order to counsel for the parties and to Magistrate Judge Paul Grimm.

### REPORT AND RECOMMENDATION

GRIMM, United States Magistrate Judge.

This action is brought pursuant to 42 U.S.C. § 405(g) for review of a final deci-

sion of the Commissioner of Social Security denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties have filed cross-motions for summary judgment. (Papers No. 11 & 13). Pursuant to Local Rule 301 and 28 U.S.C. § 636, the case has been referred to me for a Report and Recommendation. (Paper No. 9). No hearing is deemed necessary. Local Rule 105.6. For the reasons set forth below, I recommend that the Commissioner's decision be reversed and that the case be remanded to the agency for further proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

Mr. Schoofield filed applications for DIB and SSI on February 10, 1998, alleging an onset date of disability of October 9, 1997, as a result of a previous heart attack, stress, and infected intestines. (Tr. 71–73, 315–16). The claims were denied initially and upon reconsideration. (Tr. 42–44, 318–20). After a hearing before an Administrative Law Judge (ALJ) on May 4, 1999, a written decision was issued on May 21, 1999, granting Mr. Schoofield the requested benefits. (Tr. 325–34). However, the Appeals Council, acting *sua sponte* on August 25, 1999, vacated the ALJ's decision and remanded the case to another ALJ for further proceedings. (Tr. 68–70). A second hearing was held on November 1, 1999, at which Mr. Schoofield appeared with counsel. (Tr. 33–73) In a written decision dated November 23, 1999, the ALJ found that Mr. Schoofield was not disabled. (Tr. 14–21). The Appeals Council denied Mr. Schoofield's request for review on June 1, 2001, making the ALJ's decision the final, reviewable decision of the Commissioner. (Tr. 4–6).

## II. STANDARD OF REVIEW

The primary function of this Court on review of Social Security disability determinations is not to try plaintiff's claim *de novo*, but rather to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence. *King v. Califano*, 599 F.2d 597 (4th Cir. 1979); *Teague v. Califano*, 560 F.2d 615 (4th Cir.1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict was the case before a jury. *Teague v. Califano*, 560 F.2d at 618; *Johnson v. Califano*, 434 F.Supp. 302 (D.Md.1977). If there is substantial evidence to support the agency's findings of fact, then those findings are conclusive. *Jolley v. Weinberger*, 537 F.2d 1179 (4th Cir.1976); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir.1972). In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence.

However, the inquiry does not end there. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law," *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). The deferential standard of review applied to the agency's findings of fact does not apply to conclusions of law or the application of legal standards or procedural rules by the agency. *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982).[1] The Court is empowered

---

1. Purported statutory restrictions on judicial review will not be found absent clear and convincing evidence of legislative intent. *Lin-*

*dahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (holding that the Civil Service Retire-

by 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency, "with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). The Court also is empowered under that section to remand a case to the agency for consideration of new evidence upon a showing of good cause by the claimant for the failure to have presented the evidence earlier. This type of remand can occur without making any substantive ruling as to the correctness of the agency's ruling. *Id.*

■ Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. *Easley v. Finch,* 431 F.2d 1351 (4th Cir.1970). Moreover, the Social Security Act is a remedial statute and it is to be broadly construed and liberally applied in favor of beneficiaries. *Dorsey v. Bowen,* 828 F.2d 246 (4th Cir.1987). A claimant is entitled to a full and fair hearing and failure to have such a hearing may constitute sufficient cause to remand the case. *Sims v. Harris,* 631 F.2d 26 (4th Cir.1980).

## III. THE SEQUENTIAL ANALYSIS

The Social Security regulations set forth a sequential, five-step process for evaluating a claimant's eligibility for DIB and SSI. If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further. 20 C.F.R. 1520(a). First, the agency determines whether the claimant is engaged in "substantial gainful activity" as defined in §§ 404.1510, 404.1571 *et seq.,* 416.971 *et seq.* If such determination is

affirmative, no disability will be found. §§ 404.1520, 416.920.

If such determination is negative, the agency proceeds to step two, where the physical and mental impairments of the claimant are considered, severally and in combination. The impairments must meet the durational requirement, §§ 404.1509, 416.909, and be severe, §§ 404.1520(c), 416.920(c). If they do not meet those requirements, no disability will be found. §§ 404.1509, 416.909, 404.1520(c), 416.920(c).

If the claimant's impairments are determined to be severe and of sufficient duration, the agency then proceeds to the third step—the consideration of whether the impairments, either individually or in combination, meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4, the so-called "Listing of Impairments" or LOI. §§ 404.1520(d), 416.920(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. §§ 404.1520(d), 416.920(d).

If a listing is not met, the agency moves to the fourth step and considers whether the claimant retains the residual functional capacity (RFC) to perform past relevant work. §§ 404.1520(e), 416.920(e). A positive answer means that the claimant is not disabled. §§ 404.1520(e), 416.920(e).

A negative answer requires the agency to proceed to the fifth and final step. This step requires the consideration of whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no."

---

ment Act barred only judicial review of factual determinations regarding disability and not review of alleged errors of law and procedure). The deferential standard set forth in 42 U.S.C. 405(g) provides only that findings

"as to any fact, if supported by substantial evidence, shall be conclusive ..." and suggests no limits on judicial review of the application of law and procedure by the agency.

§§ 404.1520(f), 416.920(f). At this fifth step in the sequential analysis, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job existing in the national economy. *McLain v. Schweiker,* 715 F.2d 866, 868–69 (4th Cir.1983); *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir.1980). The agency must prove both the claimant's capacity and the job's existence. *Grant v. Schweiker,* 699 F.2d 189, 191 (4th Cir.1983). Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that the claimant possesses skills that are transferable to those alternative positions or that no such skills are necessary. *McLain,* 715 F.2d at 869.

## IV. THE ALJ'S FINDINGS

Applying the sequential analysis, the ALJ determined that Mr. Schoofield had not been engaged in substantial gainful activity since his alleged onset date. He found that Mr. Schoofield's major depression and somatization disorder were severe impairments, but that they did not meet or equal any in the LOI. The ALJ found that Mr. Schoofield had the RFC for heavy work, reduced by moderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, responding appropriately to changes in work

setting, setting realistic goals or making plans independently of others. He found further that Mr. Schoofield had moderate restriction in his daily activities, moderate difficulty in social functioning, an attention deficit that often resulted in failure to complete tasks in a timely manner, and one or two episodes of deterioration or decompensation. The ALJ then determined that Mr. Schoofield could perform his past relevant work. Alternatively, the ALJ found that there was work available in significant numbers in the national economy which Mr. Schoofield could perform. He concluded, therefore, that Mr. Schoofield was not disabled. (Tr. 19–20).

## V. ANALYSIS

Although the asserted claims of error are identified with turbid imprecision, it appears that they are three in number.[2]

### A. Step Two Analysis

██ Mr. Schoofield first contends that the ALJ erred in determining that his chronic gastritis and irritable bowel syndrome are not severe impairments. The ALJ wrote:

> [T]he Administrative law judge finds that claimant's back problem, gastritis, and irritable bowel syndrome are "nonsevere" impairments as the medical evidence fails to establish that these conditions significantly limit his physical or

**2.** Regrettably, the inadequacy of the Memorandum presented on behalf of Mr. Schoofield requires special mention. It is devoid of analysis supporting his claims and cites no case law regarding the alleged errors. The Memorandum provides no specific citation to medical records or testimony, forcing the reviewer, in the interest of justice, into an unguided expedition through the record. The Memorandum is without page numbers, and thus noncompliant with Local Rule 102(2)(b) (D.Md.). Counsel's apparent nonchalance on behalf of Mr. Schoofield is all the more disturbing in that it flies in the face of prior

warnings regarding similar behavior by him. *See, Maloy v. Apfel,* JFM–00–0226 (Letter to Counsel dated October 32, 2000 (FN.2)); *Bendix v. Massanari,* MJG–00–1933 (Report and Recommendation (FN.4)); *Ridgeway v. Massanari,* S–00–2352 (Report and Recommendation (FN.4)). It no longer can be tolerated. I recommend that the Court order that future submissions by counsel must contain page numbering, as well as citations to the record and appropriate case law. I also will recommend that papers not complying be returned without consideration.

mental abilities to do basic work activities (20 CFR 404.1521, 416.921). It is noted that Dr. Dellon reported that claimant's abdominal pain is non-specific. (Ex. 3F, 12F). Moreover, Dr. Kalloo's diagnosis of irritable bowel syndrome should be granted little weight, as it finds no support in his physical examination, but seems to be based on claimant's symptoms (see Ex. 7F) (20 C.F.R. 404.1527, 416.927)..

(Tr. 16). The decision does not accurately reflect the record. The ALJ fails to mention that Dr. Dellon, in fact, specifically confirmed Dr. Kalloo's diagnosis, writing that Mr. Schoofield had "irritable bowel syndrome associated with GERD [3] and H-pylori infection." [4] In rendering that diagnosis, Dr. Dellon discussed the results of a pathology report dated in February, 1998. (Tr. 138, 142). Both Dr. Dellon and Dr. Kalloo were treating physicians and the established law in this circuit is that the opinions of treating physicians are entitled to great weight and may be disregarded only in the face of persuasive contradictory evidence. *Coffman v. Bowen,* 829 F.2d 514 (4th Cir.1987).[5] There is no medical evidence in the record from any examining medical source that contradicts the diagnoses of Drs. Dellon and Kalloo, which leads to the conclusion that the ALJ's statement is no more than his own lay opinion based upon a misreading of the record. Inasmuch as this lay opinion provides the underpinning for the ALJ's findings at Step Two regarding the severity

Mr. Schoofield's GI problems, those findings cannot stand. Erroneous findings at Step Two usually infect the entire decision, since all of a claimant's impairments must be considered in combination at Steps Three, Four and Five.

## B. Step Three Analysis

Mr. Schoofield also contends that the ALJ failed to provide any analysis regarding the finding that his impairments did not meet or equal a Listing in the LOI. The ALJ found that Mr. Schoofield suffers from major depression and a somatization disorder, both severe impairments, and this finding, arguably, triggers a discussion of Listings 12.04 and 12.07, although the ALJ's decision fails to mention which listings he considered. (Tr. 15–16). The ALJ wrote only:

> ... the evidence does not demonstrate that claimant's impairments are of a severity to meet or equal any of the listings contained at Appendix 1 to Subpart P of Regulations No. 4.

That, obviously, is not an explanation but, instead, a conclusion. The Commissioner so acknowledges. *See,* Defendant's Memorandum, p. 7. The Commissioner, however, lectures that "this Court has an independent duty to scrutinize the record to locate evidence in support of the conclusion set forth by the ALJ," citing *Thomas v. Celebrezze,* 331 F.2d 541, 542 (4th Cir.1964). In *Thomas,* Chief Judge Sobeloff wrote:

---

**3.** Gastroesophageal reflux disease. The Merck Manual, 17th Edition, p. 232–33.

**4.** The pylorus is the muscular tissue surrounding the outlet from the esophagus to the stomach. Stedman's Medical Dictionary, 26th Edition.

**5.** Although it has been held that the "treating physician's rule" articulated in *Coffman* has been superseded by 20 C.F.R. § 404.1527 (*See Ward v. Chater,* 924 F.Supp. 53 (W.D.Va.

1996); *Winford v. Chater,* 917 F.Supp. 398 (E.D.Va.1996)), that is not established precedent in this circuit. The question has been addressed by the circuit only in a footnote in an unpublished *per curiam* opinion (*See Shrewsbury v. Chater,* 1995 WL 592236 (October 6, 1995)). In any case, the regulation arguably is more demanding than the common law rule in regard to the ALJ's responsibility to set forth the basis for his findings. Neither paradigm is satisfied in this case.

The Secretary, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. [Citation omitted]. If his findings are supported by substantial evidence, the courts are bound to accept them. [Citation omitted]. In short, the courts are not to try the case *de novo*. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. [Citations omitted]

*Thomas,* at 542. The Commissioner attempts to transform this reasonable statement of the court's responsibility into a mandate whereby the court is bound to conduct a review of the record to search for facts not cited or discussed by the ALJ in an effort to uphold the ALJ's decision. In sum, the Commissioner, somewhat shortsightedly,[6] advances a view 180 degrees variant from that stated in *Thomas* —that it is the role of the court to conduct *de novo* review.

 Moreover, although it is clear that the ultimate responsibility for deciding whether a claimant's impairments meet or equal any in the LOI is reserved to the Commissioner, it also is clear that an ALJ has a duty to explain the basis for his decision, as explained in depth by the Fourth Circuit:

An ALJ's decision is statutorily required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (1988) Strict adherence to this statutorily-imposed obligation is "critical to the appellate review process.... The courts have respected this requirement [in § 5579(c)(3)(A)] by remanding cases where the reasoning for the a.l.j's [sic] conclusion is lacking and therefore presents inadequate information to accommodate a thorough review." *Director, OWCP v. Congleton,* 743 F.2d 428, 429 (6th Cir.1984). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, ... an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir.1981). This court has long required specific references to the evidence supporting an ALJ's decision as part of the ALJ's "duty of explanation." *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985); *see also King v. Califano,* 615 F.2d 1018, 1020 (4th Cir.1980). Conversely, when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing. *CNA Ins. Co. v. Legrow,* 935 F.2d 430, 436 (1st Cir.1991); *Smith v. Heckler,* 782 F.2d 1176, 1181 (4th Cir.1986); *see also Congleton,* 743 F.2d at 430 ("[A]n a.l.j.'s [sic] conclusory opinion, which does not encompass a discussion of the evidence contrary to his findings, does not warrant affirmance."); *Cotter,* 642 F.2d at 706 ("[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record.")

---

6. In all other contexts, the Commissioner jealously and rightfully guards the standard of review in these cases. The Commissioner may not have things both ways, however. *See,* FN. 7.

*See v. Washington Metropolitan Transit Authority,* 36 F.3d 375, 384 (4th Cir.1994).

 In this case, the ALJ uttered only a sweeping, naked conclusion that Mr. Schoofield's condition did not meet or equal a listing. He offered no indication as to the evidence upon which he relied at Step Three or even which listing he supposedly considered. In this case, that treatment does not suffice and would not suffice in any case in which the evidence of record generates a substantive issue regarding a particular listing, whether that evidence was introduced by claimant's counsel or otherwise.[7]

There is some discussion of some of the medical evidence at Step Four and I am aware of parallels between this case and a recent unpublished *per curiam* decision, uncited by either the claimant or the Commissioner, *McCartney v. Apfel,* 2002 WL 191573 (4th Cir., Feb.7, 2002)[8], in which the Court stated:

> · ... we agree with the district court that the ALJ need only review medical evidence once in his decision. In step four ... the ALJ did in fact thoroughly examine McCartney's physical and psychological limitations, including his ailments, their effect on his daily activities, the effectiveness of medications, and other functional restrictions.

As in this case, the ALJ in *McCartney* completed a required psychiatric review technique form (PRTF). The PRTF in *McCartney* apparently tracked the requirements of the Listing at Step Three and, when viewed in *pari materia* with the analysis at Step Four, provided a window on the thinking of the ALJ, at least the appeals panel so found. In the instant case, however, the findings on the PRTF and the findings in the evaluation of evidence are inexplicably at odds. For example, the ALJ wrote that the record showed that Mr. Schoofield had received treatment for depression and somatization disorder "characterized by poor sleep, concentration problems, low energy, weight and appetite loss, suicidal thoughts, agitation and grief issues related to his father's death." (Tr. 15). Although the decision is unclear as to the weight that the ALJ attached to this evidence, once again it must be noted that it is evidence from a treating psychologist and there is no contradictory evidence from any examining medical source. Nonetheless, the ALJ has failed to note any of these symptoms in the "A" category

7. Were this not so, then this Court could not perform its limited role on appeal, *i.e.,* reviewing the record to determine whether, there exists substantial evidence to support the Commissioner's decision and whether it is correct as a matter of law. This standard of review is deferential to the Commissioner, but the benefits that it confers are earned only if the ALJ fulfills his responsibility to provide a meaningful explanation of the conclusions reached and the factual support for them. If this is not done, the Court cannot conduct its limited review, but instead, as the government in essence argues, must conduct a *de novo* evaluation of the evidence to see if there is any evidence that *could* have supported the ALJ's findings. Manifestly, that is not the responsibility of the Court, already burdened with an over-full caseload and the apparently never-abating increases in the volume of So-cial Security disability appeals. As this opinion should make clear, the ALJ's responsibility to provide meaningful explanations of the factual basis supporting his findings will be enforced.

8. Unpublished cases are not binding precedent in the Fourth Circuit, F.R.A.P. Local Rule 36(c). In any event, the case cannot reasonably be read to establish a "bright line" rule that an administrative decision is adequate so long as the medical evidence is discussed *once* somewhere within it. As noted above, the touchstone of review is whether the decision explains the analysis underlying the administrative conclusion sufficiently to permit a reasoned judgment on appeal. That, obviously, is not a matter of numbers and each case must be weighed on its own.

of Listings 12.04 and 12.07 reflected on the PRTF attached to the decision.[9]

Another of the manifest problems with the decision in this case, and perhaps a seminal problem in regard to the failed analysis, is the apparent failure of the ALJ to see—or even to investigate the possibility of—a linkage between Mr. Schoofield's somatization disorder and his irritable bowel syndrome. Somatization disorder has been described as follows:

A chronic, severe psychiatric disorder characterized by many recurring clinically significant physical complaints (including pain and GI, sexual, and neurological symptoms) that cannot be explained fully by a physical disorder.

The Merck Manual, Seventeenth Edition. P. 1508. The text goes further to describe specific diagnostic criteria which include:

... onset of physical complaints before age 30, a history of pain, affecting at least four different body parts, two or more GI symptoms, at least one sexual or reproductive symptom (excluding pain). The diagnosis is supported by the dramatic nature of the complaints and the patient's exhibitionistic, dependent, manipulative, and sometimes suicidal behavior.

. . . . .

Somatization disorder is distinguished from generalized anxiety disorder, conversion disorder, and major depression by the predominance, multiplicity, and persistence of physical complaints; the absence of biological signs and symptoms characterizing endogenous depres-

sion; and the superficial manipulative nature of the suicidal behavior.

*Id.* at 1509.

Irritable bowel syndrome, on the other hand, is described in the same source as:

A motility disorder involving the entire GI tract, causing recurring upper and lower GI symptoms, including variable degrees of abdominal pain, constipation and/or diarrhea, and abdominal bloating.

*Id.* at 312.

The source states the following as to the etiology of the disorder:

The cause of irritable bowel syndrome (IBS) is unknown. No anatomic cause can be found. Emotional factors, diet, drugs, or hormones may precipitate or aggravate heightened GI motility. Some patients have anxiety disorders, particularly panic disorder; major depressive disorder; and somatization disorder ... Some patients with IBS appear to have a learned aberrant illness behavior; ie, they tend to express emotional conflict as a GI complaint, usually abdominal pain ...

*Id.*

However, the ALJ, having found that Mr. Schoofield indeed has severe somatization disorder, not only fails to discuss any possible linkage with the diagnosis of irritable bowel syndrome—discounting the latter completely—but also fails to recognize that the major, distinguishing characteristic of somatization disorder is the manifestation of physical symptomatology and he assigns no such symptomatology to the severe mental disorder. That failing raises the question as to whether the ALJ developed even a rudimentary understanding of the disease that he found claimant

9. Remarkably, the Commissioner appears to acknowledge that Mr. Schoofield's condition satisfied the "A" criteria of Listing 12.04. *See,* Defendant's Memorandum, p. 9. Unfortunate-

ly, the source for this conclusion is nowhere to be found in the ALJ's decision and it cannot be supplied *post hoc* either by the Commissioner or the Court.

had, and which he found was a serious condition. If the ALJ had such an understanding, it cannot be gleaned from his decision.

Although not precedential, the *McCartney* case, if it stands for any principle, advances the narrow proposition that a court need not remand a Social Security disability determination when, despite a failure fully to discuss the facts of a decision, the record contains a PRTF—properly prepared by the ALJ—that may constitute a substantial equivalent analysis. *McCartney* hardly can be viewed to endorse the Commissioner's failure, such as that which occurred in this case, to discuss the relevant Step Three facts, where, based on the evidence of record, there are abundant facts which would support a decision favorable to the claimant at Step Three. Finally, *McCartney* cannot be viewed as endorsing the view that medical evidence never need be discussed at Step Three if it is discussed at Step Four for the simple reason that the issues at each step are different. A particularized discussion of the medical evidence relevant to the Step Four inquiry—whether the claimant can perform his past relevant work—is not necessarily that which is relevant to the critical Step Three inquiry—whether a claimant's medical conditions, alone or in combination, meet or equal any in the LOI.

So that my position will not be misunderstood, it will be plainly restated: When the evidence in the administrative record clearly generates an issue as to a particular listing in the LOI and the ALJ fails properly to identify the LOI considered at Step Three, and to explain clearly the medical evidence of record supporting the conclusion reached at that critical stage of the analysis, a remand can be expected to result, except in those circumstances where it is clear from the record which listing or listings in the LOI were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion.

### C. Pain Analysis

Mr. Schoofield also contends that the ALJ failed properly to evaluate his pain and its effects on his ability to work. The Commissioner submits that the ALJ properly evaluated the allegations of pain in accordance with regulations, citing 20 C.F.R. §§ 404.1529, 416.929.[10]

Pain itself can be disabling, and it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function. *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir.1989). In this Circuit, Mr. Schoofield's allegations of pain must be analyzed under a two-step process. *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

---

10. The Commissioner's Memorandum was particularly unhelpful in deciding this issue. She cites *Moon v. Sullivan,* 923 F.2d 1175 (6th Cir.1990), ignoring the existence of contrary controlling authority on the issue, *Craig v. Chater,* 76 F.3d 585 (4th Cir.1996). *See,* Defendant's Memorandum, p. 12. While an attorney ethically may cite to contrary authority in an effort to persuade a Court to change its previously stated rulings, it is a violation of Rule 3.3(a)(3) of the Rules of Professional Conduct knowingly to ignore controlling precedent, citing only to authority from another jurisdiction. To ignore, as the Commissioner did here, clear controlling authority from this Circuit in favor of contrary authority from elsewhere is evidence either of sloppy research, or, if knowing, a lack of candor to the Court. Neither reflects favorably on the Commissioner. Counsel for the Commissioner should cite first to authority from the Fourth Circuit and this District or, if resorting to authority from other jurisdictions, clearly explain whether it is consistent with or contrary to controlling authority binding on this Court.

First, there must be objective evidence showing the existence of medical impairment(s) that reasonably could be expected to cause the pain the plaintiff alleges. *Id.* If a claimant makes this threshold showing, then the intensity and persistence of the claimant's alleged pain, as well as the extent to which it affects his ability to work, must be evaluated based upon all the evidence in the record. *Id.* The ALJ's decision stated:

> [A]s part of the residual functional capacity assessment, the Administrative Law Judge has considered claimant's allegations of subjective symptoms and functional limitations. 20 C.F.R. 404.1529, 416.929, Social Security Ruling 86–7p, and *Craig v. Chater,* 76 F.3d 585 (4th Cir.1996).
>
> The Claimant testified that he suffers from a sharp back pain, as well as from a severe anxiety depression that produces suicidal thoughts, irritability and low energy, and requires treatment, and the use of Zoloft.
>
> However, he admitted that he is not taking medication for his back, gastritis, and irritable bowel syndrome, and cooks, shops, sweeps, dusts, vacuums, goes to church on Sundays, and reads the Bible 3 to 4 hours a day. Thus, since he engages in a wide range of daily activities, the undersigned finds that his ability for work has been reduced by the moderate limitations noted above. *Craig v. Chater, supra;* 20 C.F.R. 404.1529, 416.929 and Social Security Ruling 96–7p.
>
> The undersigned has not granted controlling weight to the conclusory statement of Dr. Weaver, that the claimant has not been able to perform his job duties due to medical or psychological reasons (Ex. 10f at 12), as it is unsupported by medical signs or laboratory findings (20 C.F.R. 404.1527) *Coffman v.*

*Bowen,* 829 F.2d 514 (4th Cir.1987) (20 C.F.R. 404.1527).

(Tr. 17).

First, I note the discussion above in regard to the interplay between Mr. Schoofield's mental impairments and his GI problems. Given the ALJ's findings that Mr. Schoofield has severe major depression and somatization disorder and the possible physical manifestation of those mental problems, it is impossible to dismiss the opinion of Dr. Weaver—a treating psychologist—on the ground that the opinion is "unsupported by medical signs or laboratory findings." As referenced above, one of the hallmarks of somatization disorder is that the physical manifestations—particularly of irritable bowel syndrome—cannot be explained by physical examination. In sum, one would hardly expect to find "medical signs or laboratory findings" to support Dr. Weaver's opinion and if it is to be discounted, it must be discounted under some other rationale. Dr. Weaver stated that "due to significant physical pain in stomach pt [patient] is unable to work on a regular basis." (Tr. 213). He reported "intense stomach pain—long standing." (Tr. 213). He stated "pts [patient's] pain is real & debilitating & long term result has been to cause pt. [patient] to be quite suicidal." (Tr. 212). Again, these are the statements of a treating medical source. Again, there appears to be no contradictory evidence from any examining source. The proper, required analysis of Mr. Schoofield's allegations of pain was not done here under either step required by *Craig*—neither the nexus between the somatization disorder diagnosis and the GI pain nor the intensity of that pain as described by plaintiff's treating physician was examined—and this must be done on remand.

## VI. CONCLUSION

The ALJ, counsel and the Court all have clearly defined responsibilities to insure that a disability claimant's case properly is handled. People generally do not seek Social Security disability benefits, and most particularly SSI, because they want to subsidize an already comfortable existence. In many cases, they seek benefits because they have nowhere else to turn. The ALJ's duties are clearly stated by statute, its implementing regulations, the agency's rulings, and decisional law, as described above. Counsel for the claimant has a similar duty clearly to identify the basis for any challenge to the Commissioner's decision and any evidence of record and legal authority to support an appeal. Counsel for the Commissioner owes a duty of candor to this Court and, although it is no more important than the duty zealously to advance the Commissioner's position, if that ethically can be done, this advocacy cannot be at the expense of objective analysis, competent, thorough research and sound independent judgment. Where the ALJ, claimant's counsel, and counsel for the Commissioner have done their jobs properly, this Court can do its own limited review for substantial evidence and legal correctness—focusing on the errors alleged by the claimant, reviewing the ALJ's conclusions and supporting rationale, as illuminated by the Commissioner's briefing.

In this case, the ALJ (*See* Discussion at p. 10–22), claimant's counsel (*See* FN. 2) and the Commissioner's counsel (*See* FN. 10) all performed below the standard that they should expect from themselves and that which the claimant has a right to expect of them. The casualty is Mr. Schoofield, whose claim remains unresolved and remanded for yet another round of proceedings. In this result, no one can take satisfaction.

For the foregoing reasons, it respectfully is recommended that upon expiration of the time to take exception to this Report and Recommendation, the Court enter an Order **REVERSING** the decision of the Commissioner and **REMANDING** the case for further proceedings consistent with this Report and Recommendation. Although advisory only, I further would recommend that if the Court concurs with the Report and Recommendation and the reasons supporting it, that it consider publishing this opinion so that it may provide guidance for future cases.