David WRIGHT, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant.

No. CIV.A. 04–10336MBB.

United States District Court, D. Massachusetts.

July 5, 2005.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Commissioner Jo Anne B. Barnhart, Defendant.

David F. Bander, Bander & Bander, Boston, for David Wright, Plaintiff.

Roger Witkin, Boston, MA, for Juan Nunez, Defendant.

*MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 7); DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 9)*

BOWLER, United States Magistrate Judge.

Pending before this court are cross motions by the parties, plaintiff David Wright ("claimant") and defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"). Claimant moves for reversal of the decision of the Commissioner under 42 U.S.C. § 405(g). (Docket Entry # 7). The Commissioner moves for an order affirming the denial of benefits. (Docket Entry # 9). After conducting a hearing this court took

the motions (Docket Entry # 7 & 9) under advisement.

## GENERAL BACKGROUND

Claimant is a 41 year old male who finished the eighth grade and has a General Equivalency Degree (GED). Prior to October 1, 1998, claimant worked as a telemarketer, a cashier at K Mart, a pizza delivery person, a hotel laborer, a security guard, a car salesperson and was in the army reserve. (Tr. 100–107). Claimant has been unemployed since October 1, 1998, when he terminated a telemarketer position he held for four months due to frequent bathroom trips and stomach cramping. (Tr. 23, 91 & 107). Similarly, claimant and K Mart mutually terminated the cashier position held from 1997 to 1998 because claimant required frequent trips to the bathroom. (Tr. 24 & 91).

Claimant receives $238 per month in welfare and $330 per month in food stamps. (Tr. 25). Claimant lives with his girlfriend and their seven year old daughter in a rent-free house owned by his mother. On October 18, 2001, claimant filed for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") stating that cramping, rectal bleeding and frequent bowel movements prevent him from working. (Docket Entry # 10, p. 2); (Tr. 91). The Social Security Administration ("SSA") interviewer on October 18, 2001, wrote that "client was pleasant[,] no signs of pain or discomfort during interview." (Tr. 87).

## PROCEDURAL HISTORY

The SSA denied claimant's application for disability insurance benefits on November 15, 2001. (Tr. 42). Claimant requested reconsideration and was denied benefits after reconsideration on April 11, 2002. (Tr. 46 & 47). Claimant appealed to an Administrative Law Judge ("ALJ") who conducted a hearing on May 19, 2003. (Tr. 21). The ALJ denied disability insurance benefits on July 7, 2003, after reviewing claimant's medical record, hearing testimony from claimant and hearing the opinion of a Vocational Expert ("VE"). (Tr. 10–39). The decision became final when the SSA Appeals Council denied review. (Tr. 6–9). Claimant timely petitioned this court for reversal pursuant to 42 U.S.C. § 405(g).

## MEDICAL RECORD

Claimant suffers from irritable bowel syndrome ("IBS"), small internal hemorrhoids, epigastric pain, high blood pressure, gastroesophogeal reflux disease (GERD), an inguinal hernia and complains of rectal bleeding.[1] (Tr. 143 & 150). Claimant's relevant medical history began in approximately 1989 when he had an inguinal hernia repaired.[2] (Tr. 127 & 143).

---

1. IBS, also known as spastic colon, is a relatively common gastrointestinal disorder typified by a variety of symptoms including diarrhea, constipation, abdominal cramping and complications such as diverticulosis. Alan Balsam & Albert P. Zabin, *Disability Handbook*, p. 465 (1990); *The Merck Manual of Medical Information: Home Edition*, pp. 525–526 (1997). Depression, anxiety, stress and diet may exacerbate symptoms of IBS. *The Merck Manual of Medical Information: Home Edition*, pp. 525–526 (1997). Symptoms and severity of the condition vary among individuals. *Id.* Treatments include fiber for constipation or antidiarrheal drugs for diarrhea, antidepressants, healthy diet, regular activity, and avoidance of aggravating foods. *Id.* Internal hemorrhoids are cushions of blood vessels, mucosa and tissue that form on the internal wall of the colon or rectum and may bleed. *Attorney's Textbook of Medicine*, ¶ 229.90 (1997). Treatment for internal hemorrhoids may consist of band ligation and a high fiber diet. *Id.*, ¶ 229.92.

2. Inguinal hernia exists when a section of the small intestine pushes into the passage lead-

On November 12, 1996, claimant had an appendectomy to treat acute appendicitis. (Tr. 120–121). The operation was successful and without complications. (Tr. 121). At the time of the appendectomy claimant did not complain of rectal bleeding, his stool tested normal (without blood) and the radiologist noted sigmoid diverticulosis (though the Hospital's Nutritional Assessment two days later, perhaps mistakenly, notes diverticulitis).[3] (Tr. 128, 131 & 122).

On April 13, 2000, Dr. Edwin J. Hacker ("Dr.Hacker") prescribed Accupril for claimant's high blood pressure, noted the recurrence of the inguinal hernia, and ordered a barium enema to find the source of claimant's alleged rectal bleeding.[4] (Tr. 143). Dr. Hacker notes claimant's history of diverticulitis, but the record lacks an affirmative medical test for that condition. On May 2, 2000, the barium enema, performed by Dr. Justino Fernandes, failed to find diverticulitis or inflammatory bowel diseases (Crohn's disease and ulcerative colitis), but confirmed the presence of diverticula in the sigmoid region (sigmoid diverticulosis). (Tr. 147).

On June 29, 2000, Dr. Hacker noted continued rectal bleeding, though the rec-

ord does not indicate a stool sample on that visit, and ordered a colonoscopy.[5] (Tr. 143). Dr. Hacker prescribed Axid for claimant's heartburn and noted that claimant complained of abdominal pain. (Tr. 143 & 122).

A colonoscopy performed by Dr. Arthur J. Esswein ("Dr.Esswein") on November 28, 2000, revealed a bleeding polyp that Dr. Esswein removed during the procedure. (Tr. 145). The colonoscopy confirmed diverticulosis in the sigmoid colon but found no other abnormalities or bleeding areas. *Id.* Nearly a year later during a September 25, 2001 visit to Dr. Hacker, claimant complained of rectal bleeding and diarrhea, but his stool sample did not contain blood. (Tr. 140). Dr. Hacker recommended another colonoscopy with a different gastroenterologist, Dr. Bruce R. Marcel ("Dr.Marcel"). (Tr. 140–141 & 150).

On March 13, 2002, Dr. Marcel saw claimant and deduced, based on symptoms of constipation, diarrhea, painful cramping and diverticulosis, that claimant likely suffers from IBS, for which he prescribed Levbid and Citrucel and scheduled a sig-

ing to the scrotum, creating a painless bulge in the groin area. *The Merck Manual of Medical Information: Home Edition*, p. 1063 (1997). An inguinal hernia becomes problematic if a section of the intestine gets trapped in the scrotum because it may lose blood supply and become gangrenous, requiring surgery for removal. *Id.*

3. Sigmoid refers to the section of the colon preceding the rectum. *Blakiston's: Gould Medical Dictionary* Plate 13 (1979). A diverticulum is a sack-like out-pouching of the intestine, common after the age of 40. *The Merck Manual of Medical Information: Home Edition*, pp. 538–539 (1997). Diverticula may bleed into the large intestine, but colonoscopy can identify the source of bleeding for treatment. *Id.* Diverticulosis has been associated with cramps, diarrhea and bowel distur-

bances. *Id.* Treatment of diverticulosis focuses on reducing intestinal spasms with a high fiber diet and/or fiber supplements like Citrucel. *Id.* Diverticula are problematic if they trap feces and become infected, a condition known as diverticulitis. *Attorney's Textbook of Medicine*, ¶¶ 231.60–231.61(2) (1997).

4. Barium enema is the insertion of barium sulfate, visible to X-ray, into the colon to detect a variety of ailments including diverticulitis, ulcerative colitis and Crohn's diseases. *Attorney's Textbook of Medicine*, ¶¶ 229.32(1) & 231.43–60 (1997).

5. Colonoscopy uses a video camera inserted through the rectum to find abnormalities in the colon not detected by barium enema. *Attorney's Textbook of Medicine*, ¶¶ 229.31(4) 229.32(1) (1997).

moidoscopy.[6] (Tr. 150). On April 19, 2002, Dr. Marcel performed the sigmoidoscopy that confirmed diverticulosis and revealed small internal hemorrhoids as the source of bleeding. (Tr. 163). Dr. Marcel suggested removing the hemorrhoids with band ligation to treat the bleeding and prescribed Doxepin, an anti-depressant, in the place of Levsin, an anti-spasmodic, which caused diarrhea in claimant. (Tr. 163); *Physician's Desk Reference,* 2004 WL 2460364 (2004) (describing doxepin); *Physician's Desk Reference,* 2004 WL 2460591 (2004) (describing Levsin/Levbid). The record does not indicate that claimant sought treatment for his hemorrhoids. (Tr. 163).

## RESIDUAL FUNCTIONAL CAPACITY

Claimant's treating physician, Dr. Hacker, completed a Residual Functional Capacity ("RFC") questionnaire on April 29, 2003. Dr. Carlos Carpena ("Dr.Carpena"), a Massachusetts Department of Disability Services ("DDS") physician, completed an RFC on April 3, 2002. (Tr. 165–169 & 150–159). Dr. Hacker's RFC diagnosed claimant with a left inguinal hernia and something illegible.[7] (Tr. 35 & 165). Dr. Carpena diagnosed claimant with IBS, in comity with the gastroenterology specialist, Dr. Marcel. (Tr. 151 & 159).

According to Dr. Hacker's RFC, claimant's condition has lasted or is expected to last at least 12 months, emotional factors do not contribute to the condition, the symptoms "never" interfere with attention and concentration, the condition causes a "marked limitation" in claimant's ability to deal with work stress, claimant can sit or stand continuously for 45 minutes, claimant can only sit or stand for less than two

hours of an eight hour work day, claimant does not need a job that will allow him to change position at will between sitting and standing, claimant need not elevate his legs, claimant should never lift objects even less than ten pounds, claimant is not significantly limited in his ability to do repetitive reaching, handling or fingering, and the condition would cause claimant to be absent from work about three times a month. (Tr. 165–169).

Dr. Carpena, in his RFC assessment of claimant's condition, finds no limitation in physical exertion, no postural limitations, no reaching-handling-fingering limitations, no communicative limitations, finds the condition results from a medically determinable impairment (IBS), and finds claimant limited to work environments near a bathroom. (Tr. 151–155).

## TESTIMONY

At the hearing before the ALJ, claimant testified that he suffers from severe abdominal cramping and rectal bleeding and must use the bathroom on average 20 to 30 times per day. (Tr. 27–28). He remains supine 80% of the day because any activity, lifting or stress exacerbates the cramping and diarrhea. (Tr. 29). Claimant stated he cannot sit or stand for more than 45 minutes at a time before he must lie down again, he can no longer take his daughter for walks or do minimal lifting like picking up his child's toys, doing the dishes or taking out the trash. (Tr. 31–32). Claimant's mother and girlfriend do all the house work for him and his daughter. (Tr. 30). Claimant testified that his condition fails to remit with medication and that his doctors concede they are unable to treat his condition. (Tr. 26–27).

---

**6.** Sigmoidoscopy is similar to a colonoscopy but limited to the sigmoid region where claimant's diverticula exist. *Attorney's Textbook of Medicine,* ¶¶ 229.31(3)-(4) (1997).

**7.** The ALJ found multiple entries in Dr. Hacker's RFC illegible. (Tr. 35).

The VE listened to the testimony, reviewed the record and then responded to the ALJ's hypothetical whether any occupation would accommodate going to the bathroom 20 to 30 times per day or being absent three times per month. (Tr. 35 & 37). The VE testified that no occupation would accommodate a person under the hypothetical conditions. Also, the VE testified that solely based on claimant's "marked limitation" in ability to cope with work stress noted in Dr. Hacker's RFC, claimant could not do his past work or any other work. (Tr. 38 & 166).

## ALJ FINDINGS

The ALJ found that evidence in the record showed claimant was diagnosed with IBS and diverticulosis and has medically determinable severe impairments. (Tr. 15). He found that though the impairments significantly limit claimant's ability to do past relevant work, they did not meet the criteria of impairments listed in Appendix 1, Subpart P, Part 404 and "no treating or [examining] physician has identified criteria that would meet or equal the level of severity of any listed impairment." *Id.* The ALJ cited findings of the physicians on the record and claimant's testimony regarding his impaired activity and pain. (Tr. 15–16).

The ALJ found that "claimant's statement concerning his impairments and the impact on his ability to work are not entirely credible in light of his medical history and the reports of his treating [and] examining physicians." (Tr. 16). The ALJ specified that laboratory testing showed diverticulosis and small internal hemorrhoids. *Id.* Based on the medical evidence and claimant's testimony, the ALJ found that claimant retains residual functional capacity to perform past relevant work as a telemarketer or cashier as well as a broad world of work, including heavy work or very heavy work. (Tr. 16–17).

## DISCUSSION

### A. Standard of Review

The Social Security Act provides for review of denial of disability benefits. 42 U.S.C. § 405(g). The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Manso–Pizarro v. Secretary of Health and Human Services,* 76 F.3d 15, 16 (1st Cir. 1996). This court's review is limited to whether the ALJ's decision conformed to statutory requirements and whether substantial evidence supports the result. *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1st Cir. 1981).

Substantial evidence is more than a scintilla of evidence that a reasonable person could find sufficient to support the result. *Musto v. Halter,* 135 F.Supp.2d 220, 225 (D.Mass.2001) (citing *Rodriguez v. Secretary Of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981)). "Even if the record could arguably support a different result," this Court must affirm the ALJ's conclusion if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services.,* 819 F.2d 1, 3 (1st Cir.1987).

### B. Disability Determination

The ultimate question is whether claimant is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less that 12 months.

42 U.S.C. § 423(d). The Social Security Act and regulations thereunder, 20 C.F.R. § 404.1520(4)(i)-(v) and 416.920(4)(i)-(iv), apply a five part test to determine whether a claimant is disabled for the purposes of the SSA. *Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6-7 (1st Cir.1982).[8]

Under the first step, if claimant is currently employed, he or she is automatically considered not disabled. *Id.* If claimant is not working, the decision-maker moves to the next question. Under the second step, the ALJ asks whether claimant has a severe impairment. A severe impairment meets the durational requirement, *see* 20 C.F.R. § 404.1509, and "significantly limits your physical or mental ability to do basic work activities."[9] 20 C.F.R. § 404.1520(a)(5)(b). If claimant does not have a severe impairment he or she is found not disabled. If claimant is severely impaired, the third step applies.

Under the third step, the ALJ asks whether claimant has an impairment equivalent to one in Appendix 1, Subpart P, Part 404. If claimant has a listed impairment or an impairment equivalent in severity to a listed impairment, claimant is found disabled. If claimant is found to have a severe impairment at (ii), but not one listed in (iii) then the decision-maker considers claimant's residual functional capacity to perform work under the fourth

step. 20 C.F.R. § 404.1520(e); *Goodermote,* 690 F.2d at 6.

Under the fourth step, the ALJ considers whether claimant has the residual functional capacity to do his or her past relevant work. 20 C.F.R. § 404.1560(b) (past relevant work is work done in last 15 years). If claimant can still do past relevant work, then claimant is not disabled. If claimant cannot do past relevant work, then the fifth step applies.

Under the fifth step, the ALJ asks whether claimant's residual functional capacity, age, education and work experience indicate claimant could work another job in the national economy. If so, claimant is not disabled.

Applying the foregoing sequential analysis, claimant was not working in 2001 when he applied for disability benefits. Thus, the ALJ correctly did not automatically deny benefits.

At the second step, after considering claimant's testimony and finding it supported by medical evidence, the ALJ found that claimant has a severe impairment that significantly limits his ability to perform basic work activities. (Tr. 15 & 17). Neither party contests this finding.

At the third step, the ALJ correctly found that claimant's impairments are not on the list of disabling impairments nor are they medically equivalent to any impairment on the list.[10] 20 C.F.R.

---

**8.** The analysis is the same for Social Security Insurance ("SSI") and Social Security Disability Insurance ("SSDI"). *See, e.g., Bazile v. Apfel,* 113 F.Supp.2d 181, 185 (D.Mass. 2000).

**9.** Basic work activities defined in section 404.1521(b) include:

(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking;

(3) understanding, carrying out, and remembering *simple instructions;* (4) *use of* judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

**10.** Appendix 1, Subpart P, Part 404, section 5.00, entitled *"Digestive System,"* includes three relevant impairments. First, section 5.06 lists forms of *colitis* (a.k.a. inflammatory

§ 404.1526(b); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 220 (1st Cir.1981) (medical equivalency is based on medical evidence alone).

■ Claimant nonetheless seems to argue that based on the allegation that his condition is untreatable, it is medically equivalent to a disabling impairment. (Docket Entry # 8, p. 8). Claimant's argument that his condition is untreatable is not supported by objective medical evidence. 20 C.F.R. § 404.1526. The record shows that gastroenterology specialist Dr. Marcel prescribed treatment both for rectal bleeding (band ligation of small internal hemorrhoids) and IBS (the antidepressant Doxepin and high fiber Citrucel), suggesting claimant's condition is indeed treatable. Even if Dr. Hacker's prognosis read "unknown" (rather than being unintelligible), this court's finding would not change because Dr. Marcel's opinion carries more weight than Dr. Hacker's opinion. 20 C.F.R. § 404.1527(d)(4) (the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion); 20 C.F.R. § 404.1527(d)(2)(ii) ("the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion").

Claimant's reliance on *Schoofield v. Barnhart,* 220 F.Supp.2d 512 (D.Md.2002), to show that IBS is disabling or untreatable is misplaced. In that case the court reversed and remanded the ALJ's decision because the ALJ dismissed uncontradicted medical opinions about claimant's severe depression and related somatization disorders. *Schoofield,* 220 F.Supp.2d at 523. Specifically, the ALJ found that diagnosis of IBS was not supported by "medical findings and laboratory reports," despite consistent medical opinions to the contrary. *Id.* In this case the ALJ accepted the diagnosis of IBS, considered claimant's pain symptoms and after considering the medical opinions in the record found claimant's impairment not disabling. *See Frustaglia v. Secretary of Health and Human Services,* 829 F.2d 192 (1st Cir.1987) (finding severe impairment not disabling).

■ Substantial evidence supports the ALJ's finding that claimant can perform past relevant work.[11] At this fourth step, the claimant has the burden to show that he can no longer perform his past work because of his impairment. *Manso–Pizarro,* 76 F.3d at 17. It is the duty of the ALJ to resolve conflicts in the evidence and make credibility findings. *Rodriguez,* 647 F.2d at 222. Generally, the ALJ gives more weight to a treating physician's opinion, but in this circuit the ALJ need not give controlling weight to a treating physi-

---

bowel disease) detected by barium enema. Claimant's barium enema was negative for this disorder. (Tr. 147 & 163). Second, section 5.07 lists *regional enteritis* (a.k.a. Crohn's disease) also detected by barium enema. Claimant tested negative for this disorder as well. *Id.* Third, section 5.08 lists *weight loss due to any persisting gastrointestinal disorder,* followed by a chart specifying that a person 5 foot 10 inches tall must weigh 118 to 126 pounds or less and suffer one other symptom from a list to be considered afflicted with this impairment. The record shows that claimant is 5 foot 10 or 11 inches tall and weighed between 244 and 274 pounds at all relevant times and never suffered disabling weight loss

required for section 5.08. (Tr. 90, 122, 142, 143, 149 & 161).

11. This court notes that the ALJ's finding that claimant has residual functional capacity to perform heavy work or very heavy work may be incongruent. But whether claimant can perform heavy work does not alter the narrower conclusion that he can perform past relevant work and thus does not qualify for disability benefits. *Gordils v. Secretary of Health and Human Services,* 921 F.2d 327, 329 (1st Cir.1990); *Blacknall v. Heckler,* 721 F.2d 1179 (9th Cir.1983).

cian where that physician's opinion conflicts with other medical evidence in the record, lacks support, or shows inconsistencies. 20 C.F.R. § 404.1527(d)(1)-(5); *Tremblay v. Secretary of Health and Human Services*, 676 F.2d 11, 13 (1st Cir. 1982); *Coggon v. Barnhart*, 354 F.Supp.2d 40, 51–52 (D.Mass.2005). Likewise, a VE's answer to a hypothetical is only relevant if the hypothetical corresponds to medical authority. *Arocho v. Secretary of Health and Human Services*, 670 F.2d 374, 375 (1st Cir.1982).

■ Dr. Hacker's analysis of claimant's condition contains inconsistencies within itself and with the rest of the record. First, Dr. Hacker indicates in his RFC analysis that claimant's condition is not affected by emotional factors, but IBS is considered a partially psychosomatic disorder by many doctors and Dr. Marcel prescribed the antidepressant Doxepin as part of treatment. (Tr. 166) (Questions ten to 12). Second, Dr. Hacker found claimant has a history of diverticulitis though no laboratory test in the record corroborates this and the treating gastroenterologist, Dr. Marcel, believes claimant never had a clinical attack of diverticulitis. (Tr. 150). Third, Dr. Hacker overlooks Dr. Marcel's diagnosis of small internal hemorrhoids as a likely source of claimant's rectal bleeding. (Tr. 162 & 163). Finally, Dr. Hacker leaves useful parts of the RFC questionnaire unintelligible or blank, such as the prognosis and whether claimant responded to treatment, further detracting from its value as medical evidence. (Tr. 165).

Dr. Hacker's RFC analysis differs significantly from Dr. Carpena's RFC analysis. It was the duty of the ALJ to resolve these conflicts in the evidence. *Rodriguez Pagan*, 819 F.2d at 3. The law of the First Circuit and the inconsistency of Dr. Hacker's medical opinion did not require the ALJ to give controlling weight to Dr. Hacker's RFC. *See Coggon*, 354 F.Supp.2d at 50–56.

Claimant cites *Rohrberg v. Apfel*, 26 F.Supp.2d 303 (D.Mass.1998), to support the claim that the ALJ erroneously made his own RFC finding not based on substantial evidence. (Docket Entry # 8, p. 8). That case is distinct because claimant Rohrberg suffered from Crohn's disease, an Appendix 1 disabling condition, and the ALJ did not have a physician's RFC analysis. The reviewing court found that the ALJ should have asked for a physician's RFC analysis and medical evidence supported claimant Rohrberg's disability. *Rohrberg*, 26 F.Supp.2d at 312. In this case the ALJ had two physicians' RFC opinions and had to resolve the conflict between them. The ALJ was within his discretion to rely on Dr. Carpena's RFC where Dr. Hacker's RFC was not controlling. 20 C.F.R. § 404.1527(f)(2)(i) (ALJ must consider agency medical consultants as evidence); *Coggon*, 354 F.Supp.2d at 52 (" 'the [ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors' ").

■ Similarly, the VE's opinion that claimant can no longer perform any work is not controlling. *Rodriguez*, 647 F.2d at 223. Weight afforded expert testimony may vary with the circumstances and information provided to the expert. *Gordils v. Secretary of Health and Human Services*, 921 F.2d 327, 328 (1st Cir.1990). The VE responded to a hypothetical based on Dr. Hacker's RFC and claimant's testimony. The ALJ found Dr. Hacker's RFC not supported by substantial evidence and found claimant's testimony lacked credibility. Thus, the ALJ acted within his discretion to rely on medical reports rather than on the VE's opinion. *Rodriguez Pagan*, 819 F.2d at 3 (affirming the Secre-

tary's denial of benefits despite two treating physicians who found claimant disabled where substantial medical evidence supported a third physician's contrary report).

 Claimant also submits that the ALJ failed to properly apply *Avery v. Secretary of Health and Human Services,* 797 F.2d 19, 29 (1st Cir.1986). *Avery* instructs the ALJ to conduct a thorough discussion and analysis of the objective medical and nonmedical evidence, including a claimant's subjective complaints of pain. *Avery,* 797 F.2d at 29. Specifically, the ALJ must consider six factors in evaluating claimant's subjective complaints of pain: (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and side-effects of pain medication; (4) treatment other than medication for pain-relief; (5) functional restrictions; and (6) daily activities. *Id.* "Complaints of pain need not be precisely [corroborated], but they must be consistent with medical findings." *Dupuis v. Secretary of Health and Human Services,* 869 F.2d 622, 623 (1st Cir.1989). If the ALJ finds that a claimant is not credible, this finding must be supported by substantial evidence and detailed findings. *Da Rosa v. Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir. 1986).

 Claimant argues that the ALJ did not properly consider his subjective complaints of pain because the ALJ did not ask all the *Avery* questions and that *Rohrberg* should control to the extent that frequent bowel movements and rectal bleeding are common to both claimants. (Docket Entry # 8, pp. 13–14). The ALJ, however, considered the complaints of

pain and its affect on claimant's activity and discussed them in his decision. (Tr. 16). As discussed *supra, Rohrberg* does not control because that case involved a disabling disease listed in the Social Security Act.

Claimant's subjective complaints of pain were not entirely credible nor were they sufficiently supported by medical evidence to warrant a finding of disability. *Sexton v. Barnhart,* 247 F.Supp.2d 15, 23 (D.Mass.2003) (affirming ALJ's finding that claimant was severely limited in his ability to work, but low credibility and lack of corroborating objective medical findings supported denial of disability benefits).

 The ALJ must consider the entire case record when evaluating an individual's credibility. *Social Security Ruling,* 96–7p. Courts give deference to the ALJ's credibility findings if supported by specific findings. *Frustaglia,* 829 F.2d at 195. Courts must defer to conclusions of the Commissioner if a reasonable mind reviewing the evidence on the record could come to the same conclusion. *See Rodriguez,* 647 F.2d at 222.

Claimant testified to debilitating pain and inability to do minimal activity, but not one of the four doctors claimant visited ever noted signs of severe pain or inability to care for himself.[12] *See Agresti v. Secretary of Health and Human Services,* 631 F.Supp. 1245, 1251–1253 (D.Mass.1986) (reversing ALJ's denial of benefits because multiple doctors consistently described signs of claimant's disability, pain, depression and inability to care for herself). Claimant testified there is "nothing to do" for his condition, but gastroenterology specialist Dr. Marcel suggested removal of hemorrhoids and prescribed new medicine

12. A symptom is an individual's subjective description of his or her condition. A sign is objective evidence of illness.

to treat the condition. (Tr. 26–27 & 150). Dr. Marcel also suggested removing claimant's internal hemorrhoids with band ligation, but claimant opted to "think about" the procedure rather than proceed. (Tr. 163). Claimant testified that the medication prescribed by Dr. Marcel gave him diarrhea so there is nothing to do for his condition, but the record shows Dr. Marcel suggested alternative medication. (Tr. 33 & 163).

Moreover, to receive benefits claimant must follow the treatment prescribed by his doctors. 20 C.F.R. §§ 404.1530(a) & 416.930(b). Each list of medications in claimant's various applications for disability benefits is different, detracting from the impression that claimant actively or properly treats his condition.[13] Thus, the evidence before the ALJ contained sufficient inconsistencies with claimant's testimony to support a finding that claimant's testimony was not entirely credible.[14] *See Coggon,* 354 F.Supp.2d at 58, (Tr. 109, 119 & 163).

Step five of the *Goodermote* test need not be addressed because this court finds that claimant has the residual functional capacity to perform past relevant work at step four. *See Goodermote,* 690 F.2d at 7.

Contrary to claimant's position, the ALJ's conclusion does not rest solely on a non-treating physician's RFC analysis. Rather the record contains substantial

evidence that would allow a reasonable person to conclude that claimant is not disabled. This evidence includes gastroenterologists' reports, colonoscopies, a barium enema, and absence of disabling symptoms supported by medical evidence. *See Rodriguez,* 647 F.2d at 223.

In sum, substantial evidence in the record supports the ALJ's finding that claimant's testimony lacks credibility. Inconsistencies in Dr. Hacker's RFC do not require the ALJ to give it controlling weight. The ALJ properly considered all of the evidence in the record and claimant's complaints of pain. Substantial evidence supports the ALJ's denial of disability benefits. To the extent claimant's other arguments have not been addressed, they lack merit. *Frustaglia,* 829 F.2d at 196.

## CONCLUSION

In accordance with the foregoing discussion, claimant's motion for an order reversing decision of the Commissioner (Docket Entry # 7) is **DENIED** and the Commissioner's motion for an order affirming the decision of the Commissioner (Docket Entry # 9) is **ALLOWED**. A final judgment shall issue in accord with this opinion.

---

13. On October 31, 2001, claimant states he regularly takes "advill [*sic*] and citracell [*sic*]." On the same form he states that he was prescribed Advil, Axid, Accupril and Citrucel. (Tr. 108). Applying for a social security hearing claimant writes he is taking "ichyoscyamine [*sic*], citricel [*sic*], acupril [*sic*], accid [*sic*], and advil," but in requesting an appeal he only acknowledges taking "accuprul [*sic*] and axid." (Tr. 118 & 119). Claimant never lists doxepin. Ichyoscyamine [*sic*] perhaps refers to the active ingredient in Levsin/Levbid, hyochyamine.

14. Claimant argues for reversal on the grounds that the ALJ did not sufficiently detail the evidence used in the credibility finding or the reasons for not following Dr. Hacker's RFC. (Docket Entry # 8, p. 8). *Da Rosa,* 803 F.2d at 26, and its progeny are distinguishable because they involved erroneous application of the statute or conclusions lacking substantial evidence. *Id.* (erroneous application of the "Grid"); *Bazile v. Apfel,* 113 F.Supp.2d 181 (D.Mass.2000) (remand for lack of substantial evidence). This court finds that substantial evidence supports the ALJ's credibility finding and conclusion.