**Michelle SEXTON, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant**

**No. CIV.A. 02–30089–KPN.**

United States District Court, D. Massachusetts.

Feb. 27, 2003.

---

Deborah Ann Hammer–Phillips, Center For Public, Representation, Northampton, MA, for Michelle Sexton, Plaintiff.

Michael P. Sady, United States Attorney's Office, John Joseph Moakley Federal, Boston, MA, for Jo Anne Barnhart, Commissioner of The Social Security Administration, Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE OR REMAND and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket Nos. 13 and 16)*

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) which provide for judicial review of a final decision by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"), regarding an individual's entitlement to Supplemental Security Income ("SSI") disability benefits. Michelle Sexton ("Plaintiff") claims that the Commissioner's decision denying her SSI benefits—memorialized in a December 11, 2001 decision by an administrative law judge—is not supported by substantial evidence and is predicated on errors of law. Plaintiff has moved to reverse or remand the decision and the Commissioner, in turn, has moved to affirm.

With the parties' consent, this matter has been reassigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, Plaintiff's motion to reverse or remand will be denied and the Commissioner's motion to affirm will be allowed.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

To be sure, the resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff, born on July 3, 1956, is a high school graduate. (Administrative Record ("A.R.") at 110.) Her employment history appears to consist merely of work as a gas station cashier from March of 1998 until March of 2000, although for six months during this period she was idle due to what

she describes as a stroke. (A.R. at 105.) Plaintiff resides alone in a cabin in Bernardston, Massachusetts. (A.R. at 28, 49.)

## A. MEDICAL HISTORY

Plaintiff's alleged disability purportedly commenced on December 25, 1999. (A.R. at 100.) The main impairments which she claims to be disabling are chronic back pain, adult attention deficit disorder ("ADD") and post-traumatic stress disorder ("PTSD"). (A.R. at 104.) Plaintiff also claims to suffer from right shoulder bursitis, gout and asthma. (A.R. at 30–35.) She asserts that these conditions limit her ability to work because she is unable to think clearly, concentrate or focus her attention. (A.R. at 104.) Although she can attend to most of her personal needs, Plaintiff maintains that she is afraid to go anywhere alone and needs her boyfriend to take her shopping once a week. (A.R. at 22, 42, 49.)

### 1. Back Pain

Plaintiff claims to have injured her back as the result of two car accidents in 1989 and 1991. (A.R. at 186.) On October 20, 2000, Plaintiff was seen by Vincent R. Giustolisi, M.D., of the state Disability Determination Services ("DDS") for an assessment of her back pain. (Id.) Dr. Giustolisi's report indicates that, although Plaintiff complains of lower back pain which radiates primarily to her right lower extremities, and her toes, she had good flexibility and was able to bend ninety degrees on forward flexion and fifteen degrees laterally. (A.R. at 186–187.) Dr. Giustolisi also noted that Plaintiff had no neurosensory deficits in her lower extremities. (A.R. at 187.) Dr. Giustolisi also noted that Plaintiff had been using both

Flexeril and Tylenol as needed in order to manage her back pain. (A.R. at 186.)[1]

Dr. Giustolisi diagnosed Plaintiff as having chronic back pain with loss of some mobility, but believed that she could work in a "light-duty" capacity with limitations as to prolonged standing, stooping, squatting and lifting over twenty five pounds. (A.R. at 188.) However, Dr. Giustolisi had no x-rays available to him at the time of his examination so, at the request of the Massachusetts Rehabilitation Commission, he referred Plaintiff for x-rays of her lumbar spine. (A.R. at 187.) The x-rays, taken on October 20, 2000, revealed degenerative changes with end plate spurring and interspace narrowing. (A.R. at 185.)

Subsequently, Dr. Upadhyay S. Ram (on November 1, 2000) and Dr. Larry N. Meade (on February 6, 2001) each completed a Physical Residual Functional Capacity ("RFC") Assessment for DDS. (A.R. at 190–97, 217–24.) Drs. Ram and Meade both found that Plaintiff was able to lift ten pounds frequently and twenty pounds occasionally, as well as sit, stand, and walk for six hours in an eight hour day. (A.R. at 191, 218.) They noted, however, that Plaintiff had frequent limitations to her ability to balance, kneel, and crouch and occasional limitations to her ability to climb, stoop and crawl. (A.R. at 912, 219.) Dr. Meade alone found that Plaintiff had to avoid concentrated exposure to extreme cold and fumes. (A.R. at 221.)

### 2. Mental Issues

On April 11, 2000, two weeks after quitting her job due to back pain (A.R. at 228), Plaintiff saw her treating physician, Dr. Sara Kemble, because, as Plaintiff described it, "I've lost control of my thoughts" (A.R. at 210). Noting that Plaintiff was constantly distracting herself

---

**1.** Tylenol is administered for pain relief while Flexeril is used in the treatment of muscle

spasms. *Physicians' Desk Reference* at 1929 (55th ed.2001).

and unable to complete any task, Dr. Kemble prescribed Paxil. (A.R. at 210–11.)[2]

On May 15, 2000, after not responding well to Paxil, Plaintiff returned to Dr. Kemble. Dr. Kemble noted that Plaintiff's mood had not improved and that she was experiencing "vivid dreams." (A.R. at 208–09.) Dr. Kemble concluded that Plaintiff was not depressed, but suffered from ADD. (A.R. at 207.) Dr. Kemble advised Plaintiff to be seen at a mental health agency and prescribed Ritalin. (Id.)[3] Plaintiff was feeling better by May 26, 2000, and Dr. Kemble observed that her affect was much calmer. (A.R. at 206.)

Plaintiff underwent counseling with D. Steir, Ph.D., at Franklin Medical Center on June 2, 2000. (A.R. at 163–69.) Plaintiff told Dr. Steir that she was seeking treatment due to concentration problems and recent memories of past family trauma, but that her ability to focus and complete tasks had improved dramatically with Ritalin. (A.R. at 163.) In fact, Plaintiff described feeling "enormous relief and motivation to address [her] underlying issues." (Id.) Dr. Steir noted Plaintiff's speech as "fluent," her attitude as "cooperative," her mood as "anxious" and her affect as "tearful" but "appropriate." (A.R. at 165.) Plaintiff's memory, though not formally tested, was also within normal limits, her judgment, insight and orientation were intact, and she did not have a perception impairment. (Id.) Dr. Steir also observed that, while Plaintiff was preoccupied with past trauma, her cognitive function was within normal limits and she exhibited no suicidal or self-destructive behavior. (A.R. at 165.) Dr. Steir diagnosed Plaintiff with PTSD and Attention Deficit Hyperactivity Disorder ("ADHD"). (A.R. at 166.)

On October 23, 2000, Plaintiff was again seen by Dr. Kemble, who noted that Plaintiff's ADD symptoms were better and that she was much more focused, but that she had stopped going to therapy sessions because of difficulty remembering her painful past. (A.R. at 199–201.) Dr. Kemble concluded that, while Plaintiff's PTSD and ADD were stable on Ritalin, she had not tolerated much uncovering psychotherapy and, therefore, a continued regimen was suggested. (A.R. at 199.)

On January 18, 2001, Dr. Kemble completed a "Psychiatric Disorder" form. (A.R. at 214–16.) She noted therein Plaintiff's lifelong struggle focusing and concentrating as well as her functional difficulties with educational, occupational, familial and social obligations. (A.R. at 214.) Dr. Kemble described Plaintiff's mental status as "much improved" since she started Ritalin and noted that Plaintiff's psychiatric symptoms were in remission. (Id.) Although observing Plaintiff's isolation, Dr. Kemble stated that Plaintiff was very pleasant and appropriate with a high level of social skills. (A.R. at 215.) She concluded that Plaintiff's prognosis was good provided she obtain supportive counseling and medication. (A.R. at 216.)

In February of 2001, DDS referred Plaintiff to Judith H. Skillings, Pys. D., for a further psychological evaluation. (A.R. at 225–30.) Plaintiff reported a history of trauma and heavy drinking, but that she was able to stay sober while on Ritalin and, indeed, "found Ritalin to be extremely helpful in helping her focus and not be so scattered." (A.R. at 225). On examination, Dr. Skillings found that Plaintiff was "quite worked up about the interview" and

---

2. Paxil is used for the treatment of depression. *Physicians' Desk Reference* at 3115 (55th ed.2001).

3. Ritalin is used to treat ADD. *Physicians' Desk Reference* at 2206 (55th ed.2001).

gave the impression of genuinely suffering from fairly acute PTSD symptoms. (A.R. at 228–29.)[4] Dr. Skillings diagnosed Plaintiff with, among other things, PTSD-provisional, ADHD-not otherwise specified, and alcohol dependence in remission. (*Id.*) Dr. Skillings gave Plaintiff a low global assessment of functioning ("GAF") score of 45, a current GAF score of 49, and a high GAF score of 55. (*Id.*)[5] Dr. Skillings concluded that "[i]t seems probable that with treatment, the right medication and experience with sobriety, ... [Plaintiff] could become stable enough to become employable." (A.R. at 230.)

On October 29, 2001, Dr. Kemble completed a form entitled "Medical Opinion of Ability to do Work–Related Activities (Mental)." (A.R. at 270–72.) Dr. Kemble noted that Plaintiff had a poor ability to maintain attention for two hours, be punctual, maintain regular attendance, complete a normal workday and worksheet without interruptions from psychologically-based symptoms, or perform at a consistent pace without an unreasonable number of rest periods. (A.R. at 270.) Dr. Kemble found, however, that Plaintiff had a fair ability to remember work-like procedures, understand, remember and carry out instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, deal with normal work stress and travel in unfamiliar places. (A.R. at 270–71.) Dr. Kemble further found that Plaintiff had a good ability to ask simple questions or request assistance, accept instruction and criticism from supervisors, get along with co-workers, respond appropriately to changes in the work place, be aware of and take precautions against normal hazards and interact appropriately with the general public. (*Id.*) Dr. Kemble also found Plaintiff to have an unlimited or very good ability to maintain socially appropriate behavior and adhere to basic standards of cleanliness. (A.R. at 271.) Nonetheless, Dr. Kemble concluded that Plaintiff "is severely disorganized when off medication" and "unable to complete any task due to distractibility of Adult ADD." (*Id.*)

Plaintiff's medical records were also reviewed by two non-examining psychologists, Joseph Litchman, Ph.D., and S. Carter, Ed.D., Ph.D. (A.R.172–84, 231–44, 246–49.) Dr. Litchman (who reviewed Plaintiff's records on July 25, 2000) and Dr. Carter (whose review was conducted in March of 2001) both noted that Plaintiff had Adult ADHD (A.R. at 174, 232) and suffered from anxiety with recurrent obsessions or compulsions, as well as recurrent and intrusive recollections of traumatic experiences (A.R. at 176, 241). Drs. Litchman and Carter also noted in separate mental RFC assessments that Plain-

---

**4.** On the other hand, Dr. Skillings also found that Plaintiff's speech was relevant and coherent and that she was able to follow the conversation. (A.R. at 229.) Although noting that Plaintiff was on Ritalin, Dr. Skillings found no evidence of ADD. (*Id.*) Nor did Dr. Skillings observe any evidence of psychosis or delusions; rather, she noted that Plaintiff only experienced such symptoms when taking Celexa or Paxil, anti-depressants to which Plaintiff had a negative reaction. (*Id.*)

**5.** "A GAF score represents 'the clinician's judgment of the individual's overall level of functioning.' The GAF score is taken from the GAF scale which 'is to be rated with respect only to psychological, social, and occupational functioning.' The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Munson v. Barnhart*, 217 F.Supp.2d 162, 164 n. 2 (D.Me. 2002) (quoting American Psychiatric Ass'n *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev.2000)).

tiff had moderate limitations to her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workweek, interact appropriately with the general public, and accept instruction and criticism from supervisors. (A.R. at 181–82, 246–47.) In addition, Dr. Carter concluded that Plaintiff had moderate limitations to her ability to carry out detailed instructions and get along with co-workers and that Plaintiff would be able to perform simple, repetitive tasks. (A.R. at 246–48.) For his part, Dr. Litchman concluded that, while Plaintiff would have occasional difficulty remembering and carrying out complex items and routines, she could recall one and two step instructions and carry out simple routines without significant problems. (A.R. at 183.)

## B. PROCEDURAL HISTORY

On May 26, 2000, in the midst of these medical benchmarks, Plaintiff applied for SSI disability benefits. Her application was initially denied because her condition was not deemed severe enough to affect her ability to work. (A.R. at 62–65.) On March 20, 2001, upon Plaintiff's request for reconsideration of that decision, the Social Security Administration found that, while Plaintiff was precluded from performing her past job as a cashier, her impairments were not severe enough to prevent her from doing other work in the national economy. (A.R. at 68–71.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 2, 2001. (A.R. at 22–57, 72.) After reviewing the evidence of record, the ALJ concluded on December 11, 2001, that Plaintiff was not disabled. Plaintiff's request for review by the Appeals Council was denied on March 29, 2002, thereby making the ALJ's decision the final decision of the Commissioner.

(A.R. at 6–9.) *See* 20 C.F.R. §§ 416.1455, 416.1481 (2002).

## III. DISCUSSION

An individual is entitled to SSI benefits if, among other things, she is needy and disabled. *See* 42 U.S.C. § 1381a and 1382c(a)(3). Plaintiff's financial need is not challenged. The question, therefore, is whether she suffers from a disability.

## A. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is considered disabled if she is unable to participate in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is considered disabled under the Act:

> only if his physical of mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See generally Bowen v. Yuckert,* 482 U.S. 137, 146–49, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimants physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically considered not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

.    .    .    .    .

Fourth, .... does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these questions: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question one); that she had an impairment or combination of impairments that were "severe," although not severe enough to be listed in Appendix 1 (questions two and three); that Plaintiff was unable to perform any of her past relevant work (question four); but that Plaintiff was able to perform "a significant range of light work" in the national economy (question five). (A.R. at 20–21.) As a result, the ALJ concluded that Plaintiff does not suffer from a disability.

## B. ANALYSIS OF PLAINTIFF'S CHALLENGE TO ALJ'S DECISION

Plaintiff challenges the ALJ's decision in three ways. First, Plaintiff argues that the ALJ's finding as to the severity of her impairments was not based on substantial evidence. Second, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints in accordance with applicable law. Third, Plaintiff asserts that the ALJ's conclusion that she could perform simple work tasks improperly discounted the opinions of her treating physicians, Drs. Kemble, Skillings and Steir. In response, the Commissioner argues that the ALJ properly evaluated the severity of Plaintiff's impairments, her subjective complaints and the reports of her treating physicians. For the reasons which follows, the court finds the Commissioner to have the stronger argument.

### 1. *Severity of Plaintiff's Impairments*

Plaintiff mistakenly alleges that the ALJ failed to find her impairments "severe." Contrary to Plaintiff's assertion, the ALJ actually concluded that Plaintiff "has ... PTSD, ... ADD, chronic low back pain, and asthma" which are "severe" within the meaning of the regulations, although not severe enough to meet or medically equal one of the impairments listed in Appendix 1. (A.R. at 15, 20.). Accordingly, the court rejects Plaintiff's first argument.

### 2. *Subjective Complaints*

As with her first argument, Plaintiff's second argument—that the ALJ failed to give full weight to her subjective complaints of pain which, she claims, were supported by the findings of her treating physicians.—can be disposed of in relatively short order.

In *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19 (1st Cir.1986), the First

Circuit established a road map for evaluating a claimant's subjective complaints of pain.[6] As the court observed, "[p]roper consideration of the effect of pain ... on an individual's ability to work is an important part of the disability evaluation process." *Id.* at 27 (quoting POMS T00401.570). The policy is grounded in the requirement that "there must be a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." *Id.* at 21. In essence, an administrative law judge must "obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to the claimant, his/her physicians from whom medical evidence is being requested, and other third parties who would be likely to have such knowledge." *Id.* at 23 (citations and internal quotation marks omitted). The court also requires the administrative law judge to then consider the following criteria: 1) the nature, location, onset, duration, frequency, radiation and intensity of pain; 2) any precipitating and aggravating factors; 3) the type, dosage, effectiveness and adverse side-effects of any pain medication; 4) any treatment, other than medication, for the relief of pain; 5) functional restrictions; and 6) the claimant's daily activities. *See id.* at 24–25 (citing POMS DI T00401.570); *Musto,* 135 F.Supp.2d at 227.

■ To be sure, the First Circuit has long acknowledged that an administrative law judge is not required to take a claimant's subjective allegations at face value. *See Bianchi v. Sec'y of Health & Human Servs.,* 764 F.2d 44, 45 (1st Cir.1985) (citing *Burgos Lopez v. Sec'y of Health & Human Servs.,* 747 F.2d 37, 40 (1st Cir. 1984)). Moreover, it is well established that the court must generally defer to credibility determinations made by an administrative law judge. *See Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir.1987); *Brown v. Sec'y of Health & Human Servs.,* 740 F.Supp. 28, 36 (D.Mass.1990). Still, a court must review an administrative law judge's determination to see if it comports with the law.

Here, Plaintiff maintains that the ALJ impermissibly found Plaintiff's testimony and subjective complaints of pain not credible. As the Commissioner correctly points out, however, the ALJ actually concluded that Plaintiff's allegations were credible to the extent that she claimed significant limitations to her residual functional capacity caused by PTSD, ADD, low back pain and asthma. (A.R. at 20.) Nonetheless, the ALJ concluded that Plaintiff's allegation that she was unable to work was not credible as it was not supported by objective medical findings. (*Id.*) That conclusion, in the court's opinion, is supported by substantial evidence.

■ In considering the alleged severity of Plaintiff's pain, the ALJ specifically noted her testimony that, during a typical day, she walked a mile going to and returning from the mailbox, washed dishes, swept and pulled weeds in her garden. (A.R. at 17.) The ALJ also noted that Plaintiff was able to stand and sit for twenty to thirty minutes, went shopping once a week with her boyfriend and, despite her asthma and back pain, continued to smoke. (A.R. at 18.)

---

6. Technically, the *Avery* court adopted the Commissioner's pain policy outlined in the Social Security Administration's Program Operations Manual System (POMS), DI T00401.570, a copy of which was appended to the court's opinion. *Id.* 797 F.2d at 24. The appended policy, *id.* at 27–30, has consistently been referred to as a part of the *Avery* decision. *See, e.g., Musto v. Halter,* 135 F.Supp.2d 220, 226–27 (D.Mass.2001) (citing cases).

Additionally, while Plaintiff testified regarding her alleged mental limitations—that she did not like to be around or talk to other people, was unable to drive due to blackouts, needed help with shopping because she was impulsive with money, stayed home so that she would not get hurt, and had panic attacks in big stores—she also stated that Ritalin was helping her symptoms greatly. (A.R. at 17–18.) In this vein, the ALJ referenced Dr. Kemble's treatment notes which, contrary to Dr. Kemble's conclusion that Plaintiff could not work, indicated that Plaintiff's ADD and PTSD were "stable" when she was taking Ritalin. (A.R. at 16). The ALJ viewed Dr. Kemble's treatment notes as more credible than her conclusion, as the notes "reflect attempts to help the [Plaintiff] get better, rather than advocating receipt of benefits." (*Id.*)

The ALJ's evaluation of Plaintiff's subjective complaints is also supported by his assessment of Plaintiff's residual functional capacity, much of which credited Plaintiff's testimony. The ALJ found that Plaintiff was capable of lifting or carrying ten pounds frequently and twenty pounds occasionally, sitting, standing, walking for six hours out of an eight hour day, and engaging in occasional bending and stooping. (A.R. at 18). Granted, the ALJ also acknowledged that Plaintiff was limited to performing simple, repetitive tasks, was to have only occasional interaction with co-workers and supervisors, and was to avoid interaction with the public. (*Id.*) However, the ALJ concluded that these limitations did not prevent Plaintiff from engaging in substantial gainful activity. In light of the fact that the ALJ's conclusion was based on substantial evidence in the record, the court rejects Plaintiff's second argument.

### 3. *Conclusions of Treating Physicians*

Finally, Plaintiff contends that the ALJ substituted his own opinion for that of Plaintiff's treating physicians, particularly that of Dr. Kemble, her primary care giver. Plaintiff also contends that the ALJ improperly gave controlling weight to the opinion of the non-examining physicians. The court disagrees.

■ Plaintiff's argument to the contrary, the ALJ did not fail to give proper weight to the opinions of Dr. Kemble or Plaintiff's other treating physicians. As described above, the ALJ carefully considered the medical evidence provided. To be sure, Dr. Kemble ultimately opined that Plaintiff could not work. But that conclusion is reserved to the Commissioner, not the treating physician. *See* 20 C.F.R. § 416.927(e)(1) (2002) ("*We* are responsible for making the determination or decision about whether you meet the statutory definition of disability.... A statement by a *medical source* that you are 'disabled' or 'unable to work' does not mean that *we* will determine that you are disabled.") (emphasis added). *See also Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir.1991) (finding ALJ not required to accept conclusions of claimant's treating physicians on ultimate issue of disability); *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982) (finding physician's conclusions with respect to the ultimate question of disability not binding on the hearing examiner). Indeed, as described, Dr. Kemble's opinion was undercut by her own treatment notes which indicated that Ritalin had stabilized Plaintiff's condition. Moreover, Dr. Kemble's conclusion is inconsistent with the reports of Drs. Steir and Skillings, both of whom found that Plaintiff had only moderate limitations in her ability to function in social and occupational settings. (A.R. at 16–17.)

Finally, there is no evidence that the ALJ gave controlling weight to any non-examining sources. As the parties are

aware, the ALJ "must consider findings of State agency medical and psychological consultants ... as opinion evidence" because such individuals "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(i) (2002). *See generally Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir.1988) (discussing weight to be afforded treating versus non-treating physicians). That is exactly what the ALJ did here. In particular, the ALJ considered—appropriately, in the court's view—the opinions and findings of Drs. Meade and Carter, along with all the other available medical opinions, and found them to be accurate descriptions of Plaintiff's condition and consistent with the other evidence of record. (A.R. at 18.)

IV. *CONCLUSION*

The ALJ's conclusion that Plaintiff is not disabled might not be the only possible result. Nonetheless, for the foregoing reasons, the court finds that the Commissioner's decision is based on substantial evidence and not predicated on errors of law. Accordingly, Plaintiff's motion is DENIED and the Commissioner's motion is ALLOWED. *See Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987) (a court must affirm the administrative decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result); *Weiler v. Shalala*, 922 F.Supp. 689, 694 (D.Mass.1996) (even if the facts permit diverse inferences, the court must affirm the Commissioner so long as there is substantial evidence for her determination; the mere possibility of another logical outcome is not sufficient).

IT IS SO ORDERED.