Kristin DASILVA–SANTOS, Plaintiff

v.

Michel J. ASTRUE, as the Commissioner, Social Security Administration, Defendant.

Civil Action No. 08–10019–WGY.

United States District Court,
D. Massachusetts.

Feb. 10, 2009.

DaSilva's impairments and their limiting effect on her working capability were wrong. She claims that based on a testimony of the vocational expert, there are no jobs to which she can adjust. The Plaintiff's Brief in Support of Motion for Judgment. ("Pl. Br.") [Doc. 7].

The Commissioner moves for a judgment affirming the decision of the Commissioner. Defendant's Motion for Order Affirming the Decision of the Commissioner [Doc. 11]; Memorandum of Law in Support of Motion for Order Affirming the Decision of the Commissioner. ("Def. Memo.") [Doc. 12].

### A. Procedural Posture

On July 29, 2005, DaSilva applied for Social Security Disability Insurance Benefits. Administrative Record ("Adm. R.") at 33. Her application was denied. After a hearing was held at her request on July 10, 2007, the hearing officer issued an unfavorable decision on August 29, 2007. *Id.* at 8–18. DaSilva requested review of the decision by the Appeals Council, which was denied. *Id.* at 4–7. Thereafter, on January 7, 2008 she filed the instant action in this Court. [Doc. 1].

### B. Facts

DaSilva was born on August 30, 1966. Adm. R. at 16. She graduated from high school and undertook some tax return training, later working as a tax preparer, bookkeeper, and assistant manager. *Id.* at 53. She last worked in February 2005, when her back pain, extending through her left leg, started after a long car ride. Def. Memo. at 141, 297.

From that time DaSilva underwent various doctor's visits. MRI scanning, in March 2005, showed a herniated disc, two disc bulges and diffuse degenerative changes. Adm. R. at 139–40.

Christopher Alberto, United States Attorney's Office, Boston, MA, for Defendant.

William J. Gately, Jr., Fall River, MA, for Plaintiff.

*MEMORANDUM OF DECISION*

YOUNG, District Judge.

## I. INTRODUCTION

Kristin DaSilva–Santos, ("DaSilva") brings this action against Michael Astrue, the Commissioner of the Social Security Administration, ("Commissioner") seeking a judgement reversing or, in the alternative, remanding for the further proceedings, the Commissioner's decision denying her disability benefits. Plaintiff's Complaint. [Doc. 1].

DaSilva claims that she is entitled to disability benefits because her conditions meet the definition of disability. She argues that the hearing officer's decision was not supported by substantial evidence and, therefore, the Court may reverse it or remand for further proceedings. In particular, she alleges that the hearing officer failed to consider the entire record and thus his findings as to the credibility of

On March 14, 2005, DaSilva's primary treating physician Dr. Americo Almeida concluded that she had marked sciatica,[1] which would probably require removal of the ruptured disc. *Id.* at 141.

Reports by Dr. Rajiv Nehra from March and April 2005 indicate that DaSilva experienced pain, decreased sensory perception in the left lower extremity and limited range of motion. *Id.* at 106–136. Dr. Nehra also found abnormal gait. *Id.* at 136.

Dr. Leslie Stern noted on March 16, 2005 that DaSilva's herniation showed "minimal radicular involvement." *Id.* at 155. On May 11, 2005, Dr. Stern noted that DaSilva "would still be considered disabled from performing her usual and customary work as a bookkeeper" due to her back and leg pain. *Id.* at 153. Dr. Stern recorded in July 2005 that DaSilva continued to experience significant back pain radiating to her left leg. *Id.* at 152. In September 2005, in addition to the back and leg pain, DaSilva was found to have decreased sensation in her left foot, and her deep tendon reflexes were silent. *Id.* at 151. Dr. Stern diagnosed that she had "some mild loss of function in the left leg" as a consequence of her disc herniation. *Id.* Dr. Stern suggested a procedure called nerve root decompression. Nevertheless, DaSilva could not undergo this surgery "for family reasons" until late November or early December 2005. *Id.* On December 13, 2005, Dr. Alvin Marcovici noted that DaSilva has not yet decided to undergo the surgery. *Id.* at 165. Dr. Marcovici stated that DaSilva continued to have severe disabling pain in the left leg and a disc herniation, and that she had "antalgic gait with intact motor strength." *Id.* at 165.

An examination by Dr. Joseph Doerr in March 2005, showed "decreased sensation vaguely in the left lower extremity ... otherwise no neurologic deficit, reasonably good strength and functional range of motion." *Id.* 190. In April 2005, Dr. Doerr noted that DaSilva's "[d]isability remains essentially full until much less symptomatic." *Id.* at 189.

In December 2005, Dr. Doerr noted that DaSilva's MRI showed "perhaps slight improvement" of her herniation. *Id.* at 172. The doctor stated that "[s]he somewhat perseverates on her disability status" and that she should alternate standing and sitting, avoid significant bending, excessive lifting, gripping and awkward wrist positions.[2] *Id.* An examination conducted by the same doctor in January 2006 indicated decreased sensation in the foot, but "no neurological deficit, reasonably good strength and functional range of motion." *Id.* at 170. DaSilva was also diagnosed with some restriction around the right shoulder. *Id.* Dr. Doerr thought that DaSilva's radiculopathy[3] was probably resolving, which for DaSilva would be a "relatively good overall prognostic sign." *Id.* EMG tests also suggested resolving radiculopathy. *Id.* at 171.

In March 2006, DaSilva was examined by Dr. Vladimir Yufit, a consultative examiner hired by the Social Security Administration, Adm. R. at 197. Dr Yufit found

---

1. Sciatica is a painful nerve disorder extending from the hip down the back of the thigh and surrounding area.

2. The Commissioner contends that Dr. Doerr thus "felt she could work" with some limitation in terms of sitting, standing, bending, lifting, gripping and awkward wrist position.

Def. Memo. at 3. On the basis of what Dr. Doerr actually wrote, it is rather hard to conclude that the Commissioner's interpretation is accurate.

3. Radiculopathy is a disease of the spinal nerve roots.

that her muscle strength and tone were normal; she had a pronounced curve in her lower back, but no sign of lumbar spasm; she exhibited an antalgic gait, but did not use a cane; her left leg showed reduced reflex and reduced sensation. *Id.* at 199–200. He noticed that resting seemed to alleviate DaSilva's pain. Adm. R. at 198. The same month, Dr. John McGuire assessed her respiratory impairments and indicated that DaSilva suffered from asthma and allergies but had no severe respiratory episodes. *Id.* at 212–13.

On September 11, 2006, a follow-up report by Dr. Doerr found numbness, some weakness, and decreased sensation in DaSilva's foot, but otherwise no neurological deficit. *Id.* at 221. Her strength and functional motion range were reasonably good, with restriction around the left hip. *Id.* at 221. Dr. Doerr noted that DaSilva was "miffed" at him when he suggested that she could perform part time sedentary type work with certain accommodations. *Id.* He concluded that because of her back and leg problems DaSilva was probably "permanently partially disabled." *Id.*

In a report prepared by Dr. William Guptill on November 2006, DaSilva stated that her then-current pain level was six out of ten, but physical activity could escalate it up to ten out of ten. *Id.* at 227. On a similar assessment in February 2007, she had persistent pain of three out of ten. *Id.* at 251.

In March 2006, medical consultant Barbara Scolnick completed a residual functional capacity assessment and concluded that DaSilva could lift and carry up to ten pounds frequently and twenty pounds occasionally; could stand and walk for approximately two hours, and sit for six hours in an eight-hour workday, but needed to alternate her position to relieve pain and discomfort. *Id.* at 202. Her postural activities—climbing, balancing, crawling—were limited to occasional only. *Id.* at 203.

In addition to the medical evidence presented, the record consists of reports prepared by employees of the Social Security Administration, after they had interviewed DaSilva. In July 2005 one of the agency's employees noted that DaSilva complained about the numbness in her toes; had difficulty standing up after sitting for over one hour at the interview; had a hard time walking, and had to pay attention when she was lifting her pocketbook. *Id.* at 49. Another employee of the Social Security Administration stated in December 2005 that DaSilva walked slowly with a limp and needed to lean on a desk to get up. *Id.* at 74.

At the hearing on July 10, 2007, DaSilva testified that she did not do housework, spent her days lying down to make her feel better, and could not stand or sit for more than twenty minutes. *Id.* at 302–305.

At the same hearing, a vocational expert testified about the existence of jobs to which DaSilva might adjust. *Id.* at 315–318. The hearing officer presented two hypothetical questions. First he asked whether there existed work that a person with DaSilva's education, age, work experience, and specified exertional limitation would be able to perform. The hearing officer added that the hypothetical person would also be limited to performing uncomplicated work tasks. The vocational expert testified that the "uncomplicated work tasks" limitation would prevent DaSilva from returning to her bookkeeper position and identified an aggregate of about 10,000 jobs in Rhode Island, Massachusetts, and Connecticut that fell into the category of sedentary, unskilled, entry level occupations that DaSilva was capable of performing. *Id.* at 317.

The second hypothetical question set up the scenario where, in addition to the limitations presented earlier, the hypothetical person would require recumbent rest during working hours. In his answer, the vocational expert testified that there were no such jobs available, explaining that it "would be beyond the expectations of most if not all employers." *Id.* at 318.

### C. Federal Jurisdiction

Pursuant to 42 U.S.C. § 405(g), the district court is authorized to review final decisions of the Commissioner of Social Security and may affirm, modify, or reverse any decision, with or without remanding the matter for further consideration.

## II. ANALYSIS

### A. Standard of Review

■ Under 42 U.S.C. § 405(g) the district court is empowered to review the final decision of the Commissioner. The standard of review is high and it provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). The substantial evidence standard is satisfied when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)). The court may not reweigh the evidence or substitute its own determination for that of the Commissioner. Drawing factual inferences, making credibility determinations, and resolving conflicts in the evidence are responsibilities of the Commissioner. *Id.* The review-ing court must affirm the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987).

### B. Social Security Disability Standard

In order to receive disability insurance benefits, an applicant must show that she is disabled within the meaning of the Social Security Act. *See Deblois v. Secretary of Health & Human Servs.*, 686 F.2d 76, 79 (1st Cir.1982). The disability determination depends on whether a claimant's medical conditions—those that are expected to result in her death or may last continuously for at least twelve months—prevent her from performing any substantial gainful work, considering her age, education, and work experience. 42 U.S.C. §§ 416(i)(1), 423(d). *See McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986); *Thomas v. Secretary of Health & Human Servs.*, 659 F.2d 8, 9 (1st Cir.1981).

The Social Security Administration uses a five-step sequential analysis to determine the issue of a claimant's alleged disability. 20 C.F.R. § 404.1520(a)(4). The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. *Id.* If it is determined that the claimant is disabled at a certain step of the analysis, the evaluation ceases.

The hearing officer shall issue a written decision that provides findings of facts and the reason for the decision. 20 C.F.R. 404.953(a).

## C. The Hearing Officer's Decision

The hearing officer conducted the prescribed analysis and concluded that DaSilva was not disabled. His findings were as follows.

(1) DaSilva has not worked since the onset of her alleged disability on March 8, 2005. Adm. R. at 13.

(2) She has low back impairment, asthma, depression and anxiety (severe impairments) and migraine headaches, diabetes, and right shoulder tendonitis (not severe impairments). *Id.*

(3) Her impairments do not meet listed impairments. *Id.* at 14.

(4) She has residual functional capacity to perform light work with some limitations on the time she spends standing, walking, or sitting, on her exposure to pulmonary irritants, and with a moderate reduction in her ability to maintain attention and concentration. *Id.* at 15. The hearing officer concluded that DaSilva was not able to perform her previous work, because she is not able to maintain attention and concentration on the complex tasks that working as a bookkeeper involved. *Id.* at 16.

In determining DaSilva's residual functional capacity, the hearing officer credited the limitations resulting from her asthma, depression, and anxiety but afforded only limited credibility to her statements regarding the intensity, persistence and limiting effects of her back impairment. *Id.* at 15, 16.

The hearing officer found that the MRI showed disc herniation and the EMG suggested radiculopathy, but indicated that the "examinations of the [DaSilva] back

and left leg by Dr. Joseph Doerr, MD, her treating physician, from May 13, 2005 through November 15, 2006 showed reasonably good strength, functional range of motion, fairly symmetric heel to toe gait and no neurological deficit aside from some decreased sensation in the left leg and foot." *Id.* at 16. He noted that subsequent tests "suggested a resolving ... radiculopathy" and that at the last examination by Dr. Guptill, DaSilva stated that her pain was at a level of three on a scale of ten. *Id.*

In addition to this evidence, the hearing officer considered the March 2006 residual functional capacity assessment prepared by medical consultant Scolnick, who found DaSilva able to perform light work but unable to stand or walk more than two hours in an eight hour workday. She could perform occasional climbing, balancing, stooping, kneeling, crouching and crawling and she needed to stand for five minutes from a seated position every hour. *Id.*

(5) There are significant number of jobs that she can perform. Based on the testimony of the vocational expert, the hearing officer noted that, with her residual functional capacity, age, education, and work experience, DaSilva can make successful adjustment to sedentary, unskilled, entry level occupations. *Id.* at 17.

This analysis led to the conclusion that DaSilva is not disabled. *Id.* at 18.

## D. DaSilva's Challenge to the Hearing Officer's Decision

DaSilva asserts that the decision of the hearing officer denying her benefits was unsupported by substantial evidence and that the hearing officer violated the applicable regulations. Pl. Br. at 3.

She does not contest the hearing officer's findings with regard to steps one

through four of the analysis. Rather her claim is that the hearing officer erred in the last step when, upon the testimony of the vocational expert, he wrongly determined that she could adjust to alternative work. *Id.* at 4. Actually, however, DaSilva seems to argue that her limitations were more severe than as found by the hearing officer and that they rendered her totally unable to work. Thus, she argues, there was no substantial evidence supporting the hearing officer's determination that she was not disabled.

Specifically DaSilva claims that:

(1) her impairments (such as her shoulder problem and asthma) when considered in combination render her disabled, Pl. Br. at 9–10;

(2) the hearing officer failed to consider the entire record of the case when he made his determination, Pl. Br. at 6–8;

(3) her mental conditions were not assessed properly because her headaches, anxiety, and depression prevented her from performing even unskilled work, and that based on this flawed assessment of residual functional capacity, the first hypothetical that the hearing officer presented to the vocational expert at the hearing was inadequate, Pl. Br. at 11–13;

(4) her back pain forced her to lie down during the day, thus she was unable to perform even sedentary work, and that the hearing officer had no basis to accord only limited credibility to her back pain claims. She continues that based on this mistaken assessment of the limitation secondary to her back pain, the hearing officer's ultimate determination as to her ability to work was contrary to the vocational expert's testimony that a need to lie down during the day would render her unemployable, Pl. Br. at 14.

The Commissioner denies all of her allegations and argues that substantial evidence supports the hearing officer's decision.

The Court considers her specific arguments seriatim.

### 1. Considering impairments in combination

DaSilva claims that her impairments were not assessed in accordance with Social Security Ruling 86–8, because they were not considered in combination, and considering them separately diminished their overall severity. *See* SSR 86–8, 1983–1991 Soc. Sec. Rep. (CCH) (1986). She further claims that, had the hearing officer considered these impairments in combination, he would have found her disabled. Pl. Br. at 9–10.

First, the authority DaSilva presents, SSR 86–8, is inappropriate here. Under this provision a hearing officer is required to consider all impairments in combination, in order to establish that they are severe and thus to allow the analysis to continue and proceed with an assessment of residual functional capacity. Here, whether the hearing officer considered DaSilva's impairments in combination or separately, he concluded that her impairments were severe, and this allowed him to proceed to the next step of the analysis.

Second, when the hearing officer considered the impact that DaSilva's limitations had on the work she could do, he presented a hypothetical to the vocational expert describing all of DaSilva's physical and mental limitations to be considered in combination. Accordingly this claim fails. *See Perez v. Secretary of Health & Human Servs.*, 958 F.2d 445, 448 (1st Cir. 1991)(when plaintiff's counsel added impairments to a hypothetical which had mentioned only exertional impairments, he made it sufficient to give the vocational expert grounds to consider the claimant's impairments in combination).

### 2. Considering entire record

■ DaSilva argues that while making the disability determination the hearing officer failed to consider the entire record. She claims that he omitted the majority of the relevant medical reports. Pl. Br. at 8. She presents in detail the findings by various doctors that she claims were not taken into account.[4] She also shows that in some instances the decision referred to some selected findings only and concludes that this shows that the hearing officer cherry-picked the evidence in order to support his conclusion. *Id.* at 8, 15.

DaSilva points out that the decision never mentioned the findings of Dr. Yufit, who was the consultative examiner hired by the Social Security Administration. Moreover, she states that when the decision discussed Dr. Doerr's findings, it included only the aspects of his diagnosis favorable to the conclusion reached.[5]

The Commissioner argues that the hearing officer addressed "the most pertinent evidence"[6] and points out that DaSilva provides no authority requiring the hearing officer to address every medical report in the case. Def. Memo. at 9.

It is true that the hearing officer was required to consider all the evidence. *See Lord v. Apfel,* 114 F.Supp.2d 3, 14 (D.N.H. 2000). The hearing officer was not obligated, however, to address directly every piece of evidence. *See Coggon v. Barnhart,* 354 F.Supp.2d 40, 55 (D.Mass.2005). Thus it was not necessarily error for the hearing officer not to mention in his decision the specific evidence to which DaSilva points. Omissions do not prove that the decision lacked substantial evidentiary support.

### (a) Additional consideration: conflicting evidence

■ DaSilva's recitation of the evidence omitted from the body of the decision does, however, demonstrate that with regard to a number of issues, there was a marked conflict in the evidence that went unaddressed in the decision. First, Dr. Doerr's finding of "fairly symmetric heel to toe gait" contradicts findings of antalgic gait by Dr. Yufit, Adm. R. at 200; by Dr. Nehra, *id.* at 136; and by Dr. Marcovici, *id.* at 165. Second, Dr. Doerr's statement that beside decreased sensation on her foot she suffered from no other neurological

---

4. In particular, DaSilva claims that the hearing officer ignored the following evidence, *id.* at 6–8:
—antalgic gait found by Dr. Yufit, Adm. R. at 200; by Dr. Nehra, *id.* at 136; by Dr. Marcovici, *id.* at 165;
—decreased sensation on her foot found by Dr. Yufit, *id.* at 200; by Dr. Nehra, *id.* at 106–136;
—decreased left knee jerk and left ankle jerk found by Dr. Yufit, *id.* at 200;
—decreased reflexes found by Dr. Doerr, *id.* at 98;
—silent deep tendon reflex found by Dr. Stern, *id.* at 151, 155;
—decreased range of motion found by Dr. Doerr, *id.* at 98, and by Dr. Nehra, *id.* at 106–136;
—marked sciatica diagnosed by Dr. Almeida, *id.* at 141;

—suggested removal of the ruptured disc by Dr. Almeida, *id.* at 141;
—severe disabling back pain and left leg pain found by Dr. Marcovici, *id.* at 165;
—Dr. Doerr's statement that "[d]isability remains essentially full," *id.* at 189.

5. This is not entirely true. Although, as DaSilva notes, Dr. Doerr's statement that "[d]isability remains essentially full," is omitted from the decision, the hearing officer did mention, contrary to what DaSilva claims in her memorandum, Dr. Doerr's finding of decreased sensation.

6. According to him, these are: signs of resolution of the herniated disc; pain level noted by Dr. Guptill; finding of a reviewing physician that she could perform "sit-stand work." Def. Memo at 11.

deficit contradicts Dr. Stern's finding of silent deep tendron reflexes, *id.* at 151, 155; and Dr. Yufit's finding of decreased left knee jerk and left ankle jerk, *id.* at 200. Third, Dr. Doerr's conclusion that DaSilva had reasonably good strength and functional range of motion contradicts Dr. Nehra's findings of decreased range of motion, *id.* at 106–136.

It is for the hearing officer to resolve conflicts in the evidence and this Court ought not interfere with that resolution. *See Rodriguez,* 647 F.2d at 222. Administrative evidentiary conflict resolution is not, however, utterly unfettered. Seventh Circuit jurisprudence establishes that where there is considerable evidence contrary to the position of the Social Security Administration, the hearing officer must provide at least a minimal analysis of this contrary evidence. *See Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985). This requirement makes perfect sense because it adds transparency to the process of distribution of public funds. *See Glomski v. Massanari,* 172 F.Supp.2d 1079, 1082 (E.D.Wis.2001)(where the hearing officer did not provide "an accurate and logical" bridge between the evidence and the conclusion, the reviewing court is required to remand the case on the issue, even if substantial evidence supports the ultimate conclusion (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996))). It is analogous to the First Circuit requirement that adverse credibility determinations ought not be made by a hearing officer without explanation. *See Da Rosa v. Secretary of Health & Human Servs.,* 803 F.2d 24, 26 (1st Cir.1986).

In this case, the hearing officer never acknowledged the evidence that ran counter to his conclusions nor did he analyze, even minimally, the reasons for his resolution of the conflicts. Accordingly, the Court rules that the hearing officer must provide an explanation of the manner in which he resolved the evidentiary conflicts discussed above, and the Court remands the case for this purpose.

(b) Issue of the residual functional capacity assessment

■ According to 20 C.F.R. 404.1545(a)(1), where there is a hearing, the hearing officer is responsible for making the residual functional capacity assessment. Under 20 C.F.R. 404.1545(a)(3), the assessment has to be based on all of the relevant medical and other evidence. Pursuant to 20 C.F.R. § 404.1527(f) all evidence from nonexamining sources is to be considered opinion evidence. An agency consultant may consider the evidence in the case record and make findings of fact about the medical issues and findings with regard to residual functional capacity. These findings are not evidence themselves. 20 C.F.R. § 404.1527(f)(1). The hearing officer is still responsible for reviewing the evidence and making his own findings of fact and drawing his conclusions of law. 20 C.F.R. § 404.1527(f)(2). He is not bound by any findings made by agency consultants, but must consider these findings, except for the ultimate determination of disability. 20 C.F.R. § 404.1527(f)(2)(i). He is to evaluate them using factors such as the specialty and expertise of the consultant, the supporting evidence in the case record, and supporting explanations. 20 C.F.R. § 404.1527(f)(2)(ii).

In this case, the hearing officer simply relied on the conclusions of the medical consultant, Scolnick. The hearing officer adopted Scolnick's assessment with but a slight change in his evaluation of the conditions secondary to asthma and mental impairments. Here, the hearing officer was not in a position to verify whether Scolnick met the requisite standards for

such a consultant's report when she made findings as to DaSilva's residual functional capacity. The instructions on the cover of the assessment form remind every consultant that her conclusion must be based on all the evidence on file. Adm. R. at 201. They explicitly require citations to the evidence to explain how the consultant arrived at her conclusions. Here, the explanation of the findings that Scolnick proffered is insufficient. After mentioning basic information about DaSilva and her medical conditions, *id.* at 202, the consultant simply concluded that "[i]n light of pain, can do sedentary work, stand/walk 2–4 hr/day, and when sitting must be allowed to change position every hour for 5 minutes." *Id.* The consultant never appropriately explained her conclusion by referring to the specific evidence. As this assessment was not appropriate itself, it may not become the main basis for the hearing officer's findings.

### 3. Assessment of mental condition

DaSilva challenges the assessment of her mental conditions. She states that although the hearing officer claimed to afford her anxiety and depression significant weight in his determination, he minimalized and ultimately discarded her less severe impairments such as chronic migraines. Pl. Br. at 10. She claims that her mental conditions prevented her from performing even unskilled work.

### (a) Inadequate assessment of residual functional capacity

■ The residual functional capacity assessment also turns out to be flawed. The decision noted that DaSilva suffered from anxiety and depression and wanted to stay home by herself. It concluded that DaSilva was limited in maintaining attention and concentration and explained that this kind of limitation meant that the claimant could perform simple work tasks with some breaks. Adm. R. at 15. The hearing officer, however, did not proffer the analysis that led to his conclusion.

Although the Commissioner now points to home activities that might support the hearing office's conclusions, like using a computer, maintaining finances, and socializing with family and friends, Def. Memo. at 12, the hearing officer never referred to any of these matters in his decision.

A reviewing court must look at the opinion itself and not to the arguments of the agency's counsel. *See Kurzon v. United States Postal Service,* 539 F.2d 788, 792 (1st Cir.1976). As the decision did not explain how the hearing officer reached his conclusion, the issue of residual functional capacity must be remanded to the Social Security Administration for further explanations.

### (b) Inadequacy of the first hypothetical

DaSilva further states that because the assessment of her residual functional capacity was inadequate, the first hypothetical that the hearing officer presented to the vocational expert at the hearing was also inadequate. She states that the hearing officer failed to include her non-exertional impairments caused by depression and anxiety, and only obliquely referred to these impairments in the hypothetical by stating that the hypothetical job should not go beyond uncomplicated work tasks. Pl. Br. at 11. According to her, the hypothetical understated and underestimated her limitations. DaSilva brings up that the hearing officer never asked the vocational expert about the "mental demands of unskilled work"[7] as applied to DaSilva. *Id.* at 13.

7. DaSilva cites the Social Security Administration's Program Operations Manual System

section DI 25020.010(A)(3)(a) as to the mental

In conducting the fifth step of the analysis the hearing officer may rely upon the testimony of a vocational expert. Under *Arocho v. Secretary of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982), the assumptions of a hypothetical question must correspond with the record of the case. *See Wright v. Barnhart,* 389 F.Supp.2d 13, 22 (D.Mass.2005) (Bowler M.J.); *Whitzell v. Barnhart,* 379 F.Supp.2d 204, 216 (D.Mass.2005). It is for the hearing officer to analyze the evidence, clarify and resolve ambiguities. Here, since remand is appropriate, the Court cannot yet ascertain whether the hypothetical was adequate.

### 4. Assessment of limited credibility concerning back pain.

DaSilva states that the hearing officer wrongly afforded her only limited credibility with respect to her back pain. Pl. Br. At 5. She alleges that she was unable to perform even sedentary work because her back pain forced her to lie down during the day. She continues that based on this mistaken assessment of the limitation secondary to her back pain, the hearing officer's ultimate determination as to her ability to work was contrary to the vocational expert's testimony that a need to lie down during the day would bar her from any employment. *Id.* at 14.

#### (a) Issue of limited credibility

■ First of all, DaSilva argues that the hearing officer should not award only limited credibility to claims of back and leg pain. She asserts that she is unable to perform any significant gainful activity because her back pain is so severe that she needs to lie down during the day and that condition coupled with others precludes her even from sedentary work. She states that the hearing officer failed to consider all the evidence in making the credibility assessment and that he draw his conclusion of limited credibility in only one sentence. *Id.* at 6. She also asserts that the hearing officer ignored her consistent complaints noted by physicians and agency employees who interviewed her. *Id.* at 8, 9.

The Commissioner argues that the hearing officer had sufficient grounds for disbelieving DaSilva's claims. Def. Memo at 11–12. He submits that the findings of the hearing officer are supported by the record, i.e., signs of resolution of the herniated disc; pain level of three out of ten noted by Dr. Guptill; finding of a reviewing physician that she could perform sit-stand work. Therefore, according to the Commissioner, the limited credibility findings were appropriate and sufficient. *Id.*

Moreover, the Commissioner refers to a number of cases. *Id.* He does not, however, elaborate how they support his position. In *Perez v. Secretary of Health & Human Servs.,* 958 F.2d 445, 448 (1st Cir. 1991), the First Circuit upheld a hearing officer's credibility findings as to a claimant's condition. It stated that in light of the paucity of medical evidence, the observation of the claimant's demeanor at the hearing provided substantial evidence for the hearing officer's conclusion. In DaSilva's case, however, there was substantial medical evidence, so the hearing officer was not entitled to evaluate solely her

---

demands of unskilled laborers. These include:

"—understand, carry out, and remember simple instructions;
—make ... simple work-related decisions;
—respond appropriately to supervision, co-workers and work situations; and

—deal with change in a routine worksetting."
POMS DI 25020.010(A)(3)(b)
Should the claimant substantially lack one or more of these capabilities, this may result in a conclusion that the claimant is not able to work.

demeanor. In *Ortiz v. Secretary of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991), the First Circuit affirmed a hearing officer's credibility finding that discounted a claimant's claims of pain, because the records showed improvements and had the claimant's pain been as severe as he claimed, he would have sought more treatment throughout the year between the onset of his alleged disability and his application for the benefit. Here, although her conditions were improving, DaSilva was regularly consulting with her physicians. In *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989) a credibility determination was affirmed because "there was no credible medical evidence supporting claimant's allegations." Here, there are records showing DaSilva's back impairments and those records seem to be credible.

When a claim of disability is based on a subjective symptom such as pain, a two step analysis is conducted. First, the claimant has to show that there are medical records of the impairments that reasonably can be expected to cause the pain. Second, the hearing officer has to consider the intensity and persistence of the pain and its functional impact on the claimant's ability to work. 20 C.F.R. § 404.1529. Several factors such as daily activities, medications, and measures to relieve pain are considered. *Id.* Social Security Ruling 96–7p (point 2) requires that at the second step (the intensity and persistence determination) the credibility of the claimant's statements about the symptomatology and its functional effects are to be determined. SSR 96–7p, 1996 WL 37186 (S.S.A.). In making the credibility determination the hearing officer must consider the entire record, including medical records and statements made by the claimant, treating or examining physicians, and other persons. SSR 96–7p (point 4). The determination must provide reasons for the credibility findings, supported by references to the case record, and must be sufficiently specific to make clear to the claimant and any subsequent reviewers the weight the officer gave to the claimant's statements and the reasons for that weight. SSR 96–7p (point 5).

DaSilva's medical conditions are of a type that reasonably can cause pain. Nevertheless, the hearing officer did not entirely believe DaSilva's account of her back pain. The Commissioner asserts that the hearing officer considered the intensity and persistence of DaSilva's symptoms and their impact on her ability to work as mandated by 20 C.F.R. § 404.1529(a) and found that "the evidence did not support her claims." Def. Memo. at 10.

The decision itself contains a relatively short analysis of the evidence that supports the hearing officer's finding as to DaSilva's residual functional capacity. It presents a quite fair recitation of DaSilva's health conditions. There is no actual explanation, however, of the reasons that the hearing officer found DaSilva's back pain claims only partially credible. The daily activities to which she testified, such as lying down, having naps, doing little during the day, do not undercut her credibility. Unlike the Commissioner's assertion, *id.* at 11, DaSilva's claim is not "contrary to the face of the (hearing officer's) decision" because the decision does not address the relevant factors as to credibility.

Here, the hearing officer did not meet the standard that required him to give specific reasons for his credibility finding. He never pointed to the factors that led him to this assessment of DaSilva's credibility. Nevertheless, upon reviewing the record and the decision itself there is some evidence for his conclusion as to limited credibility. DaSilva's condition was improving since the onset of her injury.

During the visit with Dr. Guptill she admitted that her pain level was only at the level three out of ten. The reports prepared by Dr. Doerr, which favor the Commissioner's position, were later in time than most of the evidence that favors DaSilva.

Were this the only inadequacy in the decision, the court might affirm in the light of the record as a whole. But it is not.

(b) Inadequacy of the second hypothetical

DaSilva challenges the conclusion that was drawn from the answer given by the vocational expert to the second hypothetical question. The vocational expert testified that a person who is required to take breaks during the working hours and lie down cannot perform any sedentary work, because this condition would exceed the expectations of the employers. Adm. R. at 318. DaSilva claims that there are no jobs to which she might adjust and that the hearing officer's denial of her disability claim directly contradicted the testimony of the vocational expert.

As discussed previously, the hearing officer has to explain the basis for disbelieving the claimed intensity and persistence of DaSilva's back pain. He has to specify why he did not believe that DaSilva had to take breaks of recumbent rest. Unless the credibility finding is specifically explained, DaSilva's allegation with regard to the second hypothetical cannot properly be resolved.

### III. CONCLUSION

The hearing officer "cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings. Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the [hearing officer] for further explanation." *Crosby v. Heckler*, 638 F.Supp. 383, 385–386 (D.Mass.1985) (Zobel, J.) (citation omitted). This Court thus remands the case to the Social Security Administration for amplification of the following issues: (1) resolution of the conflicts in the evidence; (2) a conclusion as to DaSilva's mental limitations secondary to her anxiety and depression; and (3) credibility findings with respect to DaSilva's back pain.

The hearing officer must sufficiently explain his reasoning in handling these issues to make them clear for DaSilva and any subsequent reviewers.

SO ORDERED.